CLARA A. LAMB et al., Respondents, *v.* SAMUEL TREAT LAMB et al., Respondents, et al., Appellants.

In the interpretation of a will, a residuary clause, the language of which is ambiguous, is to be given a broad rather than a narrow construction, so as to prevent intestacy, and a general residuary clause carries every interest whether known or unknown, immediate or remote, unless it is manifestly excluded; the intention to include is presumed and an intention to exclude must appear from other parts of the will.

The use of the word "bequeath" or "surplus" in a residuary clause, although having a more appropriate application to personalty is not decisive against construing it as including real estate also.

The will of S. contained a large number of devises and bequests. The scheme of the testator as to the devises was in most instances to create a life estate in the first taker, with remainder to his or her surviving descendants. In the event of the death of any life tenant without issue, the fee was undisposed of unless it passed under the residuary clause. The commencement of that clause was as follows: "Of the rest, residue and remainder of my estate I give and bequeath." Then followed bequests of certain pecuniary legacies, and thereafter the following: "If the said rest, residue and remainder of my estate shall not be sufficient to pay all the above-named legacies * * * they are each to be reduced proportionally * * *. If after the payment of all these legacies there should remain a surplus undisposed of, I do give and bequeath the same," etc. One of the life tenants died without issue surviving. In an action for the partition of the real estate devised to her for life, it was claimed that the residuary clause was limited to the personalty and that said real estate descended to the heirs at law. *Held,* untenable; that the will did not disclose so clear an indication of an intention on the part of the testator as to justify the court in so restricting the residuary clause; that his manifest intention was to dispose of all his property.

(Argued January 21, 1892; decided March 1, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made June 12, 1891,

which denied a motion for a new trial on exceptions to the report of a referee herein as to the rights of the various parties to share in certain real estate.

This action was brought for a partition of certain lots in the city of New York, of which Anthony Lamb died seized and possessed, and a life estate in which he devised to his daughter, Sarah Lamb, by the sixteenth clause of his will.

The provisions of said will and the facts are sufficiently stated in the opinion.

*William B. Hill* for appellants. As words having a strict legal interpretation will be extended in meaning to effectuate a testator's intention, so will such words be narrowed in meaning to accomplish the same purpose. (*Roe* v. *Vingut*, 117 N. Y. 204–212; *In re White*, 125 id. 545–549; *Riker* v. *Cornwell*, 113 id. 125; *Doe* v. *Earles*, 15 M. & W. 450–456; *Woollam* v. *Kenworthy*, 9 Ves., Jr., 141; *Coard* v. *Holderness*, 20 Beav. 147.) The presumption is with the heir; to strip him, there must be an effectual gift to another. (*Floyd* v. *Carow*, 88 N. Y. 570; *Lynes* v. *Townsend*, 33 id. 561; *Scott* v. *Guernsey*, 48 id. 106, 121; *Clark* v. *Jacobs*, 56 How. Pr. 530; *Newell* v. *Toles*, 17 Hun, 77; *Degraw* v. *Cornell University*, 45 id. 365, 366; 111 N. Y. 66; *Quinn* v. *Hardenbrook*, 54 id. 83; *Delafield* v. *Parish*, 25 id. 32; *Van Kleek* v. *Dutch Church*, 20 Wend. 457, 469, 489; 1 Jarm. on Wills, 645.) In construing a will, the court will consider the intelligence of the testator and his understanding of the legal effect of language as shown by his will. The court will regard the pertinency of the omission as well as of the employment of words, and will give to repetitions the same meaning. (*Lynes* v. *Townsend*, 33 N. Y. 565; *Hoyt* v. *Hoyt*, 85 id. 150; *Scholle* v. *Scholle*, 113 id. 272; *Willetts* v. *Willetts*, 35 Hun, 401.) The so-called residuary clause is merely a bequest of a particular residue within the authorities, and can confer no title to the lands in suit. (*In re Benson*, 96 N. Y. 510; *Stephenson* v. *O. O. Asylum*, 27 Hun, 383, 384; 92 N. Y. 433; *Riker* v. *Cornwall*, 113 id. 126; *Kerr* v. *Dougherty*, 79 id. 347, 348;

*Newell* v. *Toles*, 17 Hun, 76; *Dowd's Will*, 8 Abb. [N. C.] 118.) The presumption against intestacy has no such force as is claimed by the respondents, and is not a substitute for testamentary intention. The weight of presumption and of the rules of interpretation is in appellants' favor. ·(*In re Reynolds*, 124 N. Y. 388, 397; *Crozier* v. *Bray*, 120 id. 377; 2 Jarm. on Wills [5th Am. ed.], 396; 3 id. 704; *In re Karr*, 2 How. Pr. [N. S.] 408; *Luce* v. *Dunham*, 69 N. Y. 39, 43; *Wigram* on Wills [2d Am. ed.], 58, 66; *Rhodes* v. *Rhodes*, 27 Beav. 413; *Cushman* v. *Horton*, 59 N. Y. 152.)

*George F. Martens* for respondents. The testator's daughter Sarah O. Gillespie never was vested with any estate in the premises in question, therefore her husband acquired no interest in said premises by her will. Having never been seized of an estate in the premises she could make no effectual devise of any interest therein. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 337.) The testator intended to and did dispose of his entire estate. (*Floyd* v. *Carow*, 88 N. Y. 560; *Riker* v. *Cornwell*, 113 id. 115; *In re Bonnet*, Id. 522.) There being no statement that the case contains all the evidence, the facts are not before the court for review, and the only questions in regard to the findings that can be reviewed on this appeal are the questions of law. (*Aldridge* v. *Aldridge*, 120 N. Y. 614.) The intention of the testator must be derived from an examination of the whole instrument. (*Wager* v. *Wager*, 96 N. Y. 164; *Dubois* v. *Ray*, 35 id. 167; *Post* v. *Hover*, 33 id. 593; *Roome* v. *Phillips*, 24 id. 468; *Pierrepont* v. *Edwards*, 25 id. 131; *Delany* v. *Van Auler*, 84 id. 22.) If the real meaning and intention of the testator and his plain and definite purposes are endangered by inapt ·or inaccurate modes of expression, the court may reject words and limitations, supply them or transpose them, to get at the correct meaning. (*Pond* v. *Berg*, 10 Paige, 140; *Drake* v. *Pell*, 3 Edw. Ch. 251; *Mason* v. *Jones*, 2 Barb. 229; *Phillips* v. *Davies*, 92 N. Y. 204.)

*Alfred B. Thatcher* for respondents. The residuary gift should be held to include the remainder in this land. (*Vernon* v. *Vernon*, 53 N. Y. 351, 361; *Thomas* v. *Snyder*, 43 Hun, 14, 15; *Bates* v. *Hillman*, 43 Barb. 645, 647; *Ferry's Appeal*, 102 Penn. St. 207, 210; *Lamb* v. *Lamb*, 37 N. Y. S. R. 703; *Floyd* v. *Carow*, 88 N. Y. 560; *Riker* v. *Cornwall*, 113 id. 115; *Youngs* v. *Youngs*, 45 N. Y. 254, 259; *Bowers* v. *Smith*, 10 Paige, 193, 202; *Craig* v. *Craig*, 3 Barb. Ch. 76, 101; *Allen* v. *Shepard*, 11 N. Y. S. R. 561, 564; *Cruikshank* v. *Home for Friendless*, 113 N. Y. 337, 354; *Byrnes* v. *Baer*, 86 id. 210; *Allen* v. *White*, 97 Mass. 504; *O'Toole* v. *Brown*, 3 E. & B. 572.) There is no technical reason why the phraseology of the residuary gift should not pass real estate. (*Harper* v. *Bleau*, 3 Watts. 471; *Laing* v. *Barbour*, 119 Mass. 523, 525; *Burwell* v. *Vandeville*, 2 How. [U. S.] 560, 578; *Pitman* v. *Stevens*, 15 East. 505, 510; *Evans* v. *Price*, 118 Ill. 593; *Barry* v. *Barry*, 15 Kan. 587; *Chandler's Appeal*, 34 Wis. 505.) The general scope of the will, and the apparent intention of the testator, negative the claim of the appellants. (*Wager* v. *Wager*, 96 N. Y. 164, 167; *Riker* v. *Cornwell*, 113 id. 115, 125; *Phillips* v. *Davies*, 92 id. 199.) The papers connected with the accounting of the executors of Anthony Lamb can have no effect in support of appellants' claim. (Code Civ. Pro. § 2742; 2 R. S. 94, § 65; *Bank of Poughkeepsie* v. *Hasbrouck*, 6 N. Y. 216; *In re Hood*, 90 id. 512.)

*Amundson Ward* for respondents. The exceptions taken by appellants to the referee's findings of fact cannot be reviewed by this court. (*Wahl* v. *Barnum*, 116 N. Y. 87; *Raynor* v. *Raynor*, 94 id. 248, 252; *Dorchester* v. *Dorchester*, 30 N. Y. S. R. 498; *Aldridge* v. *Aldridge*, 120 N. Y. 614; *Harvy* v. *Cherry*, 76 id. 436, 439; *Clark* v. *Ketchum*, 22 Barb. 319.) A lapsed devise was created by the death of Sarah Lamb Gillespie, prior to that of Violetta Lamb, and such devise falls into the residuary estate. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 337; *Youngs* v. *Youngs*, 45 id. 254.) The

twenty-third clause of the will of Anthony Lamb is a residu-
ary clause, capable of passing real estate, and under it this
realty passed to John, George and Anthony (now Samuel
Treat) Lamb and Agnes Richards, their heirs or devisees.
(*Wager* v. *Wager*, 96 N. Y. 164; *Lamb* v. *Lamb*, 37 N. Y.
S. R. 699; 3 Jarman on Wills, 704; *Vernon* v. *Vernon*, 53
N. Y. 351, 361; *Thomas* v. *Snyder*, 43 Hun, 14, 15; *In re
Reynolds*, 124 N. Y. 388, 394; *Jackson* v. *Robbins*, 16 Johns.
537; *Riker* v. *Cornwell*, 113 N. Y. 115.) The contention
that these plaintiffs are estopped from denying the appellants'
claim is of no force or effect. (*Lamb* v. *Lamb*, 37 N. Y. S.
R. 699, 703.)

*G. G. & F. Reynolds* for respondents. Upon the death of
the testator's widow, Violetta, and his daughter Sarah, without
issue, and the termination of their respective life estates, the
premises in question became part of the testator's residuary
estate, and passed, under the twenty-third clause of his will, to
his children John, George, Anthony (now Samuel Treat) and
Agnes, or their descendants, *per stirpes*. If this proposition is
not correct, then the testator died intestate as to said remainder.
The law never favors an intestacy. (4 Ves. 59, n. 2; *Bates*
v. *Hillman*, 43 Barb. 645.) The language of the residuary
clause is the rest, residue and remainder of my estate. This is
broad enough to cover real estate. (Jarman on Wills, 320,
321.) The common-law rule that lapsed devises do not fall
into the residue, but go to the heirs as undisposed of by will,
was done away with by the Revised Statutes (2 R. S. 57, § 5),
and there is now no difference between lapsed devises and
lapsed legacies, as it respects the operation upon them of a
general residuary clause. (*Cruikshank* v. *Home for Friend-
less*, 113 N. Y. 337.)

*Frederic A. Ward* for respondents. The will under con-
struction shows not only a strong intention on the part of
Anthony Lamb to avoid intestacy as to any of his property,
but unusual and extraordinary care to make that intention

effectual. (*Bliven* v. *Seymour*, 88 N. Y. 469.) A construction of a will which would result in partial intestacy will not be adopted unless forced upon the court and every presumption is in favor of the residuary devisee. (*Kerr* v. *Dougherty*, 79 N. Y. 328, 360; *Cruikshank* v. *Home for Friendless*, 113 id. 337; *Riker* v. *Cornwell*, Id. 115; *Byrnes* v. *Baer*, 86 id. 217.)

ANDREWS, J. Anthony Lamb, a resident of the city of New York, died in May, 1855, leaving a widow and five children surviving him, and the issue of four daughters who had died before him. He left a large real and personal estate. By his will he devised specifically each parcel of his real estate, and bequeathed various legacies and annuities. By the second clause of his will he gave to his wife a life estate in certain lots in the city of New York, and following the gift of the life estate are the words: "And the remainder in fee I give and devise to certain of my descendants, as hereinafter mentioned." By the sixteenth clause he disposed of the lands wherein a life estate was given to his wife, to four of his children, as follows: Two of the lots to his son John in fee simple, two to his daughter Agnes Richards for life, and at her death to her descendants then living, and two to his daughter Sarah (then about forty years of age and unmarried) for life, and the remainder as follows: "And should she marry and have children, I give and devise said lots at her decease to her descendants then living, if more than one, to be divided among them in the same manner as if she had died seized of the same intestate, but if only one, then the whole to such only descendant." The daughter Sarah married after the death of the testator and died September 3, 1886, childless. The widow of the testator died in October, 1889.

This controversy relates to the lands devised to Sarah in the 16th clause of the will. It is claimed on the part of the appellants that upon her death without issue the lots descended to the heirs at law of the testator as in case of intestacy, subject to the life estate of the testator's widow. It is claimed on the

part of the respondents that on the death of Sarah the fee of the lands passed under the twenty-third clause of the will to the testator's sons John, George and Anthony, and his daughter Agnes, as a part of his residuary estate. The construction of this clause is the only point in controversy, that is to say, whether the residuary clause relates to personalty only, or includes, as well, lapsed devises and any interests in realty not effectually disposed of in other parts of the will.

The specific devises and legacies are contained in the clauses of the will preceding the twenty-second. In some cases the devises to his children and grandchildren are in fee. But the general scheme of the testator was to create a life estate in the first taker, with remainder to his descendants living at his death. The devise to his son John of a lot on Pearl street, in the third clause; to his son George of lots on Third and Fourth streets, in the fourth clause; the devise in trust for the benefit of his son Anthony, in the seventh clause; to the children of his deceased daughter Matilda, in the eighth clause; and the devises in the sixteenth clause to his daughters Agnes and Sarah, already mentioned, were framed on this principle. All the living children were married and had issue at the death of the testator, excepting the daughter Sarah and the son Anthony. In all devises of the character referred to, the final vesting of the fee under the will depended upon the contingency of the life tenant, leaving descendants surviving him at his death. In the event of the death of any life tenant without leaving issue or descendants, the fee was undisposed of unless it passed under the residuary clause. The scope of the residuary clause is, as we have said, the turning point in the case.

The twenty-second clause of the will commences as follows: "*Twenty-secondly.* Of the rest, residue and remainder of my estate I give and bequeath," etc., and then follows bequests of sundry pecuniary legacies to children and grandchildren. The twenty-third clause is as follows: "*Twenty-thirdly.* If the said rest, residue and remainder of my estate shall not be sufficient to pay all the above-named legacies contained in the twenty-second clause of this my will, they are each to be

reduced proportionately, according to the amount of such remainder. This reduction, however, is not to apply to the legacies granted by any other parts or clauses of this my will. If after the payment of all these legacies there should remain a surplus undisposed of, I do give and bequeath the same unto my sons John, George and Anthony, and to my daughter Agnes Richards, to be equally divided between them."

The construction of residuary clauses in wills has been frequently before the courts. The intention of the testator is to be followed if the actual intention is discoverable from the language employed. There is no rule of law which prevents a testator from restricting the operation of a residuary clause to a particular or specific residue. He may make the residuary clause general and comprehensive, so that it shall carry any residue, whether of personalty or realty, or both, or he may confine its operation to property of a particular class or to a particular interest. But where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction. It prevents intestacy, which it is reasonable to suppose testators do not contemplate, and if the mind is left in doubt upon the whole will as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet the testamentary purpose, because such a clause is usually inserted to provide for contingencies or lapses, and to cover whatever is left, after satisfying specific and special purposes of the testator manifested in the other clauses of his will. The court in *Floyd* v. *Carow* (88 N. Y. 560), in considering the construction of a residuary clause in a will, said: "The intention of the testator to restrict the operation of the residuary clause cannot be deduced from the mere absence of words in the will directing that a particular interest or estate upon which the residuary clause is claimed to operate, was in the contemplation of the testator when the will was made or from the fact that the reversion was a mere expectancy dependent upon the failure of issue or other improbable contingency. A general residuary devise carries every real interest, whether

known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take." And in *Riker* v. *Cornwell* (113 N. Y. 115), GRAY, J., said: "I think the doctrine is firmly established by reports of cases and the text books, that where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of residuary is not narrowed by words of special and of unmistakable import, he will take whatever may fall into the residue by lapse, invalid disposition or other accident." The contention here is that the residuary clause is not general but special and refers to personalty only, and that the perusal of the will shows an intelligent use of appropriate legal language throughout the instrument, and it is insisted that the language of the residuary clause should, therefore, have a strict construction and that words therein should be deemed to have been used in their exact legal sense. The will indicates that it was drawn by a competent and experienced draftsman. The words " I give and devise " are used in all cases (except one) where the will disposes specifically of real property, and the words " I give and bequeath " in dispositions of personalty, and the use of these phrases are frequent. In the gift of life estates, to the testator's wife the words are " I give and bequeath," which is the exception. The inappropriate use of the words " devise" or "bequeath" is not generally a very material circumstance, as they are often used indifferently in wills. (*O'Toole* v. *Browne*, 3 El. & Bl. 572; *Allen* v. *White*, 97 Mass. 504.) But their accurate and discriminating use in a will containing many provisions has doubtless some significance. But the intention of the testator to dispose of all his estate by his will is quite manifest In respect to the lands embraced in the second clause, already adverted to, he first carves out a life estate in several pieces of property for his wife, and then says, "the remainder in fee I give and devise to certain of my descendants, as hereafter mentioned." By the sixteenth clause, remainders in these parcels are given as above stated. The remainder to the children of Sarah

was contingent upon her marriage and the birth and survival of issue, and in the event, unless the fee passed by the residuary clause, it did not pass under the will. It is possible that the testator did not contemplate that the remainders would fail for want of issue of his children. But this would not prevent their inclusion in the residue, if the words of the residuary clause are broad enough to comprehend them. The words are not to be narrowed upon the suggestion, although plausible, that the testator did not anticipate that any of his devises would lapse. The learned counsel for the appellant in his argument places great stress upon the word "surplus" in the 23d clause. The language of the residuary gift, "if, after the payment of these legacies, there should remain any surplus undisposed of, I give and bequeath the same unto my sons, John, George and Anthony, and to my daughter Agnes," etc., refers, it is claimed, to a surplus remaining after paying thereout the legacies given in the 22d clause, ascertainable on the settlement of the estate by the executors in the usual course of administration, and has no reference to contingent interests in land, which may fail by the non-happening of the event upon which they are limited. The word "surplus" in the 23d clause relates to what remains of the "rest, residue and remainder of my estate," out of which, by the 22d clause, the legacies given in that clause are to be paid. The residue mentioned in that clause is of the estate, and the word estate comprehends all the residue of the property not otherwise disposed of, real and personal, unless a limited meaning is attached thereto by the context. (*O'Toole* v. *Browne*, *supra*.) There are no words in the 22d clause which restrict the residue there mentioned to personal property. If there had been no personal property out of which the legacies therein given could be paid, they would, we think, by necessary construction, be chargeable upon any real estate undisposed of by the will, or as to which the disposition of the will should fail. It would seem to follow that if the residue mentioned in the 22d clause comprehended both real and personal property, and they were blended together as the

source from which the legacies were to be paid, that the surplus mentioned in the 23d clause was the surplus of the same residue after satisfying the legacies charged thereon, that is to say, any surplus either of real or personal property. The fact that the word "surplus" has a more appropriate application to personal property or money, is not decisive against construing it as including real estate also. (*Byrnes* v. *Baer*, 86 N. Y. 210; *Chandler's Appeal*, 34 Wis. 505.)

The selection by the testator of four of his living children as his residuary legatees to the exclusion of his daughter Sarah and the children of his deceased daughters, is consistent with his general purpose and furnishes no ground for a construction limiting the scope of the 23d clause. Concededly, he designed to give to the selected beneficiaries the residue of his personal estate, which, after paying the legacies given in the 22d clause and all charges of administration, amounted to about $45,000. The intention to prefer the four children named in the 23d clause is also apparent from the 7th clause of the will. By that clause a trust is created for the benefit of his son Anthony, and he devises to a trustee the equal undivided half of a store and lot on Pearl street, in trust to apply the rents and profits to the use of Anthony for life, with power to sell in certain contingencies specified, and on the death of Anthony, to sell the lot (if not sold before) and divide the proceeds among the children of Anthony, or their issue living at his death. Then follows a gift over in these words: "And in case my son shall die without leaving any descendants, then the principal sum shall revert to and form a part of my residuary estate." It will be observed that the share of Anthony is given over on his death without leaving descendants, to the four residuary legatees specified in the 23d clause. The will shows an intention by the testator not to divide his estate equally among his children and the representatives of deceased children. The discrimination is marked throughout the will. It seems that the testator's son Anthony is still living, but is childless, and it is probable that the trust estate will go to the residuary legatees under the disposition in the 7th clause. The argument that

the testator could not have intended to postpone the taking effect of the residuary gift beyond the ordinary period of administration, and did not embrace devises that might lapse by the death of devisees without issue at a remote period, is entitled to but little weight in view of the provision as to the ultimate disposition of Anthony's share contained in the 7th clause. There is no apparent reason why the testator should intend that the share of Anthony should, in default of issue, pass to the residuary legatees, and not the shares of the other children in the same contingency. The design may have been expressed in the case of Anthony with more distinctness than in the other cases, from the fact that having constituted a trust fund, it was quite natural that the testator's attention would be specifically called to its ultimate disposition when the trust should terminate.

We have been impressed in this case with difficulty, which often attends the search for the intention of a testator. Many of the rules which courts have adopted as guides in ascertaining the intention of testators, assume an intention from words and phrases, where often it is very doubtful whether they were used with any intelligent appreciation of the legal meaning given to them. But these rules have become, in many cases, rules of property, and work out perhaps in the majority of cases results as nearly just as may be. It is better to adhere to them in their integrity than to permit exceptions upon slight grounds. The rule that in the interpretation of wills, residuary clauses are to be given a broad rather than a narrow interpretation, has a stronger foundation in natural reason than have some of the other rules adopted by courts.

In this case we do not think there is found in the will so clear an indication that the testator intended a restricted meaning to the residuary clause, as to justify the court in limiting it to personal property.

This leads to an affirmance of the order below.

All concur, except MAYNARD, J., taking no part.

Order affirmed.