WALTER CARTER, as Executor, etc., of JOHN SPAULDING, late of the City, County and State of New York, Deceased, Respondent, *v.* THE BOARD OF EDUCATION OF THE PRESBYTERIAN CHURCH OF THE UNITED STATES OF AMERICA, and Others, Appellants, and ABEL SPAULDING, and Others, Respondents.

*Right of an executor to compel repayment of money paid by him on void legacies — bequests to Pennsylvania religious corporations — general and specific residuary clauses in wills.*

The fact that an executor may be exempt from liability for payments made by him in good faith, under the terms of the will, on account of legacies which are subsequently held to be void, does not preclude him from recovering the money from the parties to whom it was paid without right, or invest such parties with the title to the money.

The doctrine established by *Kerr* v. *Dougherty*, 79 N. Y. 327 — that a legacy, given by the will of a resident of the State of New York, executed less than one month before his death, to a religious corporation of the State of Pennsylvania, is void, because of the Pennsylvania statute which prohibits devises or bequests to any body politic, or person in trust, for religious or charitable uses, unless by will made at least one month before the death of the testator — applied.

A will, after directing the executors to convert the testator's property into money and "to pay and dispose of the proceeds thereof as herein directed," gave four legacies of the same amount each to certain religious corporations, and then provided as follows: "And whatever moneys may remain in the hands of my said executors after the payment of the foregoing bequests, I hereby direct my said executors to divide into three equal parts and to pay one-third thereof" to each of three other religious and charitable corporations; two of the four legacies first provided for proved to be void.

*Held,* on a consideration of the whole will, that the residuary clause above quoted was general and not specific, and, hence, that the amount of the void legacies should go to the legatees named in the residuary clause, and not to the next of kin as undisposed of by the will.

APPEALS by the defendants, the Board of Education of the Presbyterian Church in the United States of America, the Presbyterian Board of Relief for Disabled Ministers and the Widows and Orphans of Deceased Ministers, the Board of Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America, and the Presbyterian Board of Aid for Colleges and Academies, from parts of a judgment of the Supreme Court, rendered upon the decision of the court at the New York Special Term, and entered in the office of the clerk of the city and county of New York on the 20th day of December, 1892.

The case of *Kerr* v. *Dougherty* (79 N. Y. 327, approved in *Hollis* v. *Drew Theological Seminary,* 95 id. 166), referred to in the following opinion, establishes the doctrine, among others, that the provision of the act of the Legislature of Pennsylvania of 1853, relating to corporations, etc., which prohibits devises or bequests to any body politic, or person in trust, for religious or charitable uses, unless by will executed at least one month before the death of the testator, relates to and affects the power to take as well as the power to devise, and, therefore, that a religious corporation of that State cannot take a bequest to it in trust for such purposes contained in a will executed in the State of New York by a

citizen thereof within one month of his death, and such a bequest is void.

The defendants, the Board of Education and the Board of Relief for Disabled Ministers, are religious and charitable corporations of the State of Pennsylvania. None of the societies mentioned herein were formed under the general act of 1848 of the State of New York for the incorporation of benevolent, charitable and missionary societies.

*John E. Parsons*, for the appellants.

*Delos McCurdy*, for the plaintiff (respondent).

*John P. Clark*, for the defendants (respondents).

O'BRIEN, J. :

John Spaulding, the testator, executed his will March 21, 1889. He died March 30, 1889. He left surviving him no issue, or widow, father or mother, but did leave certain next of kin and heirs at law, brothers and sisters, nephews and nieces, all parties to this action.

At the time of his death he was seized and possessed of real and personal property situate within this State to the value of $45,000.

By his will he directed his executors to convert his estate into money as soon as convenient, and to pay and dispose of the proceeds as directed.

He made these specified bequests to certain charitable organizations and corporations of the Presbyterian church :

Board of Home Missions, $3,000. There is no controversy as to this. Board of Foreign Missions, $3,000. There is no controversy as to this. Board of Education, $3,000. Declared to be invalid. Board of Relief for Disabled Ministers, etc., $3,000. Declared to be invalid.

The will then proceeded :

" And whatever moneys may remain in the hands of my said executors after the payment of the foregoing bequests, I hereby direct my said executors to divide into three equal parts, and to pay one-third thereof" to the American Seaman's Friend Society, one-third thereof to the Board of Church Erection Fund, and one-third thereof to the Board of Aid for Colleges.

This clause was held by the court below to be a specific residuary clause, and, therefore, the amount of the invalid legacies passed to the next of kin as undisposed of by the will.

The different appeals bring up these three points :

1. That it was error to allow the plaintiff to recover back the amounts he had paid on account of the legacies now found to be void — brought up by the appeals of the Board of Relief and the Board of Education.

2. That it was error to adjudge void the legacy to the Board of Education — brought up by the appeal of that board.

3. That it was error to hold that the void legacies, if any, did not fall into the residuum and pass to the residuary legatees — brought up by the appeals of the Board of Church Erection and Board of Aid for Colleges.

To sustain the contention that it was error to allow the plaintiff to recover back the amounts he had paid on account of the void legacies, it is insisted that there was no evidence to support the finding that the executor made these payments under a mistake of fact; and that, even though there had been, nevertheless, it was error to conclude as a matter of law that these boards must refund to the executor the amounts already paid by him on account of their legacies. Appellants invoke the well-settled rule, that to warrant a court of equity to relieve against mistake of fact, it must be the mutual mistake of both parties, or there must be the mistake of one and the fraud of the other in taking advantage of it; and another rule, equally well settled, that, where the executor volunteers to pay the whole or any portion of a legacy, and it subsequently appears that the assets are not sufficient to justify a payment to that extent, the loss must fall upon the executor, and he cannot compel the legatee to refund.

This last rule we do not think can apply to a case such as this, where the payment is not made voluntarily and upon an assumption that there are assets sufficient, which assumption subsequently turns out to be erroneous. Here the executor, under the terms of the will, was directed and required to pay these legacies, and, having no reason to believe that the legacies themselves were void, it was in the discharge of his duty as executor that the payments were made. The legacies themselves, however, having by the judgment been

declared void, we can think of no principle that would protect the legatees from being obliged to refund the amounts thus paid to them. The right to require such a payment is in no way affected by the fact that the executor would be protected from personal liability for such payments made by him. In other words, the exemption from liability with which the law might clothe the executor for payments made in good faith could not be extended so as to preclude him from recovering back from the parties to whom the money was paid without right, or invest such parties with the title to such moneys.

The analogy sought to be drawn between a payment made by an executor of a legacy held to be void, and a payment made by an assignee under the terms of an assignment held to be void, is illusory, as the distinction between the two makes clearly evident. In the case of an assignment subsequently held to be void, a payment by the assignee to a preferred or general *bona fide* creditor before action brought to attack the assignment would not make the assignee responsible for such payment. But is there any doubt as to the right of the assignee to recover back moneys paid to a supposed creditor, whether general or preferred, who after such payment is shown never to have had any valid or legal claim against the assigned estate? Undoubtedly, the assignee who made the payment in good faith, before action brought to determine the validity of such a claim, would be protected, as he would in the case of a payment made to a preferred creditor, although the assignment should be subsequently set aside and adjudged to be fraudulent and void. With respect to a valid claim, the ground upon which it could be urged that the assignee could not recover a payment made to a *bona fide* creditor could be sustained, as it has been, by the view that the creditor received but his due out of the debtor's property. But with respect to an invalid claim, just as here in the case of a void legacy, the determination being that the party never had any claim against the estate, the right to compel a repayment seems, in the absence of any authority to the contrary, reasonably free from doubt.

The point that it was error to adjudge void the legacy to the Board of Education we regard as equally untenable. Upon this question we agree with the conclusion of the learned trial judge in

holding that the cases of *Kerr* v. *Dougherty* (79 N. Y. 327, and *Hollis* v. *Drew Theological Seminary* (95 id. 166), are direct authorities and controlling.

The remaining question is, whether the void legacies passed to the residuary legatees, or are to be regarded as so much of the estate of the testator remaining undisposed of and which descends to his next of kin. In passing upon this question it becomes necessary to examine the language of the will, in order to determine whether the residuary clause is general or specific and restricted.

After a direction to his executors to convert his property into money and " to pay and dispose of the proceeds thereof as herein directed," the testator gives four legacies of $3,000 each, and then directs as follows : " And whatever moneys may remain in the hands of my said executors after the payment of the foregoing bequests, I hereby direct my said executors to divide into three equal parts." Then follows the designation of the three legatees, each of whom was to receive one-third. The question is, did the testator by this language intend to make a general residuary disposition of his property ? If he did, then the law is well settled that in a will of personal property the general residuary clause carries whatever is not otherwise legally disposed of, or otherwise stated. A general residuary clause includes not only what is not specifically given, but also what is ill-given, or whatever fails by lapse, indefiniteness or invalidity.

The canons of construction to determine whether a residuary clause is general or not are thus stated in *Lamb* v. *Lamb* (131 N. Y. 227):

" The construction of residuary clauses in wills has been frequently before the courts. The intention of the testator is to be followed if the actual intention is discoverable from the language employed. There is no rule of law which prevents a testator from restricting the operation of a residuary clause to a particular or specific residue. He may make the residuary clause general and comprehensive, so that it shall carry any residue, whether of personalty or realty, or both ; or he may confine its operation to property of a particular class or to a particular interest. But where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction. It pre-

vents intestacy, which it is reasonable to suppose testators do not contemplate. And if the mind is left in doubt upon the whole will as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet the testamentary purpose, because such a clause is usually inserted to provide for contingencies or lapses, and to cover whatever is left after satisfying specific and special purposes of the testator manifested in other clauses of his will."

The court, in *Floyd* v. *Carow* (88 N. Y. 560), in construing the construction of a residuary clause in a will, said: " The intention of the testator to restrict the operation of the residuary clause cannot, however, be deduced from the mere absence of words in the will denoting that a particular interest or estate, upon which the residuary clause is claimed to operate, was in the contemplation of the testator when the will was made, or from the fact that the reversion was a mere expectancy, dependent upon the failure of issue or other improbable contingency. A general residuary devise carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take." And, in *Riker* v. *Cornwell* (113 N. Y. 115), GRAY, J., said: " I think the doctrine is firmly established, by reported cases and by the text-books, that, where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue by lapse, invalid dispositions or other accident."

In the case last above cited (*Riker* v. *Cornwell*) it is further said: " In ascertaining the intention of the will maker, we should not seek it in particular words and phrases nor confine it by technical objections. We should find that intention by construing the provisions of the will with the aid of the context and by considering what * to be the entire scheme of the will."

It is clear, construing the language of this will, that if the testator had omitted the words " after the payment of the foregoing bequests," no doubt could arise but that a general residuary clause

* Sic.

would have been created. And while there is much force in the suggestion that those words give the clause a restrictive meaning, still when we consider the language of the entire will, we think it consistent with the view that the testator did not intend to limit his residuary legatees to what would remain after deducting the amounts provided to be paid by the former bequests. As stated, there was a direction to his executors to convert all his property into money "and to pay and dispose of the proceeds thereof as hereinafter directed." Here is an expressed intention that all his property was to be disposed of by his will, and after providing for certain bequests which he undoubtedly assumed to be valid, he left the entire remainder to the residuary legatees. This view of the testator that all of the bequests were valid would explain the presence in the will of the expression "remaining after the payment of the foregoing bequests," which, it is insisted, gives to the clause a restrictive meaning.

As said in *The Matter of Bonnet* (113 N. Y. 522): "We hold that unless a contrary intent *unequivocally* appears elsewhere in the will, a lapsed or void legacy will be carried by a general gift of the residuum of the testator's estate. If the title of a residuary legatee is not narrowed by special words of *unmistakable* import, the gift will carry with it all that falls into the residue, whether by lapse, invalid disposition or other accident."

We fail to find in this will the intent "unequivocally expressed," or "by special words of unmistakable import" that the title of the residuary legatee is limited to a particular fund or to a certain residuum ; and though some authorities and expressions of opinion may be found to the contrary, notably in *The Matter of Benson* (96 N. Y. 499), the trend of the more recent decisions, and particularly that of *Lamb* v. *Lamb* (*supra*), is, as stated, that "where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction. It prevents intestacy, which it is reasonable to suppose testators do not contemplate. And if the mind is left in doubt upon the whole will as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet the testamentary purpose. * * * "

We do not think that the intention is so clearly expressed as not

to raise a doubt. Still, upon a consideration of the entire will, we have reached the conclusion that it was the intention of the testator not to confine or circumscribe the residuary legatees to a particular fund or residuum, but that he intended by that clause in his will to create a general residuum, under which the legatees would take all his property, except such as was specifically bequeathed. And upon this view, it would follow that the void legacies fall into the residuum, and should be divided among the residuary legatees.

The judgment should, therefore, be affirmed in all respects, except as to the disposition made of the void legacies, which should pass into the residuary estate, to be disposed of as therein directed, without costs to either party upon this appeal.

Van Brunt, P. J.:

I concur. The case of *Kerr* v. *Dougherty* seems to have been repeatedly overruled in respect to the rule governing the disposition of void or lapsed legacies.

Follett, J., concurred.

Judgment affirmed in all respects as to the disposition made of the void legacies, which should pass with the residuary estate, to be disposed of as therein directed, without costs to either party upon this appeal.