In the Matter of the Estate of WINFIELD S. JONES, DECEASED.

[Decided December 29, 1904.]

**Substitutional Legacies.**—Where a Decedent Leaves Two Testamentary Instruments which are admitted to probate as his last will, in each of which he bequeaths to several persons, respectively, the same amounts, and denominating each instrument as his last will, such language constitutes intrinsic evidence of the testator's intention, and the legacies in the latter instrument are substitutional for those contained in the former.

**Charities—One-third of Estate—Conflict of Laws.**—Where a testator leaves real and personal property in California and real property in other states, and devises one-third of his estate to charities, the courts in this state cannot take into account the property situated beyond their jurisdiction in determining what one-third of the estate is.

**Charities—One-third of Estate—How Determined.**—The word "estate," as employed in section 1313 of the Civil Code, means estate in California. The one-third of the estate which may be given to charity is one-third of the distributable assets of the estate.

**Residuary Clauses.**—Where Two Testamentary Instruments are Admitted to Probate as the last will of the testator, each instrument in itself being complete as a will and each containing a residuary clause, the two clauses are inconsistent and the latter clause prevails, unless it fails in whole or in part, in which event the residuary clause of the prior will operates.

**Residuary Clauses—Charities.**—In this Case it is Held that the Residuary legatees under a former will take the residuum of the estate, which is beqeathed to charities by the residuary clause of a latter will, but which they are unable to take by virtue of the restrictions imposed by section 1313 of the Civil Code.

**Wills—Several Instruments.**—The Rule of Construction is substantially the same where there are several wills to be harmonized, as where there are several clauses in the same will and codicils.

**Wills—Transposition of Order of Bequests.**—Where it appears from the entire language of a will that the testator's intention will be rendered clearer by transposing the order of the bequests, the court will construe the bequests as though the testator had written them in the transposed order.

**Wills—Several Instruments.**—Two testamentary instruments are to be taken and construed together as one instrument.

**Wills.**—All the Parts of a Will are to be Construed in relation to each other, so as, if possible, to form one consistent whole; but where several parts are wholly irreconcilable, the latter must prevail.

Wills.—A Prior Will Remains Effectual so Far as Consistent with the provisions of the subsequent will.

Charities.—The Excess of an Estate All Over and Above the One-third to charities goes to the residuary legatee or devisee, preferably to the next of kin or heirs at law, according to the provisions of section 1313 of the Civil Code.

Intestacy.—The Very Fact of Making a Will Raises a Very Strong Presumption against any expectation on the part of the testator of leaving any portion of his estate beyond the operation of his will.

Intestacy—Intestacy is not Favored in Law.—The law prefers a construction of a will which will prevent a partial intestacy to one which will permit such result.

Smith & Pringle, for executors.

P. J. Muller, representing Page, McCutchen & Knight, for Mary and Virginia B. Jones, sisters of decedent, and residuary legatees under the first will.

Garber, Creswell & Garber, for the First National Bank of Bakersfield, as assignee of W. Brooks Jones, one of the legatees under both wills.

Elliott McAllister, for Maria Kip Orphanage.

Wilson & Wilson, for Bishop Armitage Orphanage.

E. H. Rixford, for Protestant Episcopal Old Ladies' Home.

E. H. Rixford, and William Mintzer, for Grace Church.

COFFEY, J.   Winfield S. Jones died leaving two wills. The first will was dated July 15, 1896.   The codicil added thereto was dated October 7, 1899.   The second will was dated August 31, 1901.   These three testamentary instruments were admitted to probate as the last will of the deceased: Civ. Code, sec. 1320.

By the first instrument there is bequeathed to S. L. Abbot the third, the sum of one hundred (100) dollars; to W. Brooks Jones, a nephew of deceased, the sum of five thousand (5,000) dollars; and to T. Skelton Jones, an uncle, the sum of five thousand (5,000) dollars. In addition, there are bequests to other persons.   Executors are appointed, and the

residue of the estate is devised and bequeathed to Mary Jones and Virginia B. Jones, the testator's surviving sisters, thus disposing of his entire estate.

By the codicil the sum of one thousand (1,000) dollars is bequeathed to the rector, wardens and vestry of Grace church.

The second will which, in effect, likewise disposes of the entire estate of the testator, ends with the words "This is my last will." It contains bequests to a number of persons, including the persons aforementioned, namely, S. L. Abbot the third, W. Brooks Jones, and T. Skelton Jones, to each of whom there is bequeathed the sums respectively bequeathed to them by the first will; the remainder is given and devised to charities. No executors are appointd in this will.

The estate of the deceased consisted of real and personal property situate in California, aggregating in value a sum in excess of one hundred thousand (100,000) dollars. Also real property situate in Washington, D. C., and an interest in the family farm situate in Fairfax county, Virginia, which are specifically devised by the second will to the testator's sisters. These properties have never formed part of the estate within the jurisdiction of this court, and were not inventoried and appraised.

The bequests to charities, by the residuary clause of the second will, collectively exceed one-third of the estate.

The questions of law involved and presented to the court for consideration are as follows:

First. Are the bequests to S. L. Abbot the third of one hundred (100) dollars, to W. Brooks Jones of five thousand (5,000) dollars, and to T. Skelton Jones of five thousand (5,000) dollars, accumulative or substitutional? It is contended by the sisters of the deceased that they are substitutional; the assignee of W. Brooks Jones claims that they are cumulative.

Second. Are the charities entitled to one-third of the property situate in Washington and Virginia, and if so, is that third to be paid them out of California assets? The charities contend that they are entitled to one-third of the assets of the estate wherever situate, payable out of the California estate. The sisters oppose this contention.

Third. Are the sisters of deceased entitled to the residue of the estate under the residuary clause of the first will, exclusive of the next of kin or heirs of the testator? The sisters claim that they are. The assignee of W. Brooks Jones is opposed to this view.

These questions will be dealt with in their order.

First, therefore, let us consider whether the bequests to S. L. Abbot the third, W. Brooks Jones and T. Skelton Jones in the second will are substitutional or accumulative.

It is a well-known rule of law that if two legacies are given to the same person, and the intent is that the legatee shall have both, the legacies are said to be cumulative; if the latter is only a repetition of the former, it is said to be substitutional. In ascertaining the intent, the following rules of construction have been adopted:

1. If the same specific thing is bequeathed twice to the same legatee in the same will or in the will and again in the codicil, the legatee can claim the benefit of only one legacy, because the same identical thing can only be given once.

2. Legacies of quantity bequeathed by one and the same instrument, if of unequal amounts, are cumulative; if equal, the second is considered a repetition or substitution of the first, and the legatee is entitled to one only.

3. Legacies of quantity, given by different testamentary instruments, as by will and codicil, to the same person, are prima facie cumulative, whether of equal or unequal amounts, unless the amounts are the same and expressed to be given with the same motive, or it appears from intrinsic evidence that the second instrument was intended as a mere substitution for the first. If either of these latter circumstances occurs, the second legacy is substitutional: See 13 Am. & Eng. Ency. of Law, p. 54 et seq.

It is only necessary for the present to consider the third of these rules.

It appears intrinsically from the instruments themselves that the bequests in the second will to the persons aforesaid are substitutional; the very language contained in the second will is conclusive upon that point. The second will ends with the words "This is my last will." What more forcible mode of expression could the testator have employed to indicate

that the legacies to S. L. Abbot the third, W. Brooks Jones and T. Skelton Jones contained in the second will were to be a substitution for the legacies to them of the same amounts, respectively, contained in the first will?

And thus the courts have held that the form of the instrument by which the second legacy is given may show that it was intended to be substitutional. Such is the case where the two legacies are given by different instruments and the latter instrument is not a codicil but is described as a last will and testament, or is such in effect.

In the case of Attorney General v. Harley, 4 Madd. (Eng. Ch.), 267 (decided May 17, 1819), the vice-chancellor said: "If the legacies to Mrs. Harley were alone to be considered, she would be plainly entitled to both; but the question here is whether the instrument does not afford internal evidence that it was meant by the testatrix, not as an addition to the first instrument but as a substitution for it. It begins with all the forms of the first instrument, with the same expressions of religious resignation, nearly in the same words. It then proceeds to appoint Martha Harley her sole executrix, by the same description as in the first instrument; and it then proceeds to give, with little variation, the same legacies to the same persons who were the objects of her bounty by the first instrument. I think the inference irresistible that the textatrix intended the third instrument as a substitution for the first; and that Mrs. Harley must therefore take the unconditional legacy of 1,000£ given by the third instrument, in the place of the conditional legacy given by the first instrument."

In the case of Hemming v. Gurrey, decided May 5, 1825, 2 Sim. & S. 212, at page 222, it is said: "With respect to the plaintiff's claim of two annuities of 500£ each, under the two testamentary papers of G. Hemming, I am of opinion that the second instrument was not made as an addition to, but as a substitution for, the first if not wholly, at least in the greater part and plainly as to the annuities in question. This is evident from comparing the form and expression of the two instruments, from the general similarity of the two annuities and legacies, and from the particular gifts of the Barrow and Edgeware estates."

In the case of Kidd v. North, decided April 22 and 24, 1845, 14 Sim. 462, "Testator by his will gave to his son 20£ to be paid within one month after his death. . . . . By a subsequent testamentary instrument which purported to be his last will, but which he left unfinished, he gave 19£ 19s. to his son. . . . . Held, that the legacies of 19£ 19s. . . . . were substitutions for the legacies of 20£ . . . . previously given to the son."

Again, in the case of Tuckey v. Henderson, decided July, 1863, 33 Beav. 176, the master of the rolls said: "I am of the opinion . . . . that upon the construction of these two wills of the testatrix, the second instrument was meant to be in substitution for the first. It is true that both are wills of the testatrix, and that both are admitted to probate, and that it is therefore simply a question of construction. But as a question of construction, I am of opinion that the second is substitutionary for the first, as regards the legacies in the first will to legatees who are also named as legatees in the second. This differs from the case of a codicil—a codicil is professedly an addition to the will—but this is professedly a substitution for it. Though it is called 'the last will' that does not prevent the proof of the prior will which is not revoked; . . . . I think the legacies are substitutionary and not cumulative."

And on page 177 it is said: "In the case of five legatees the sums are identical, and in all the other cases the same legatees take different sums.

"I am of opinion, regarding it as a question of construction, as the Lord Chancellor did in the case referred to, and considering that although the testatrix calls the second instrument 'my last will,' yet both have been admitted to probate, you must look at the general scope of both and see if substitution is intended. I am of opinion that it is, and I will make a declaration to that effect."

In the case of Jackson v. Jackson, 2 Cox C. C. 42, Mr. Justice Buller says: "The first question in this cause is whether the legacies given by the instrument which has been proved in the spiritual court as a testamentary schedule are cumulative, or whether they operate as destroying the legacies given by the will—that is, whether the testator had an inten-

tion of giving the latter legacies as *additions* to or *substitutions* for the former. Now, every part of the testamentary schedule makes this too clear to admit of a doubt. The testator begins it by saying 'I make this my last will and testament'; this therefore is a substitution for a former will, not a codicil added to it. . . . . As to the pecuniary legacies themselves, it is equally clear, they were not meant as double; the same sums are given to many of the legatees, though not so to all. If the legacy to Ann had stood alone, there might be some weight in the argument. She took by the first instrument 500£ and by the second 100£, and if there had been nothing in the second *to explain the testator's intent* [underscoring ours] her legacy must have been taken as cumulative; . . . . I think, therefore, upon the whole that it is apparent he did not mean to give cumulative legacies, but to substitute the latter for the former. . . . . The legacies, therefore, arise on the second instrument, but came in under the charge made on the land by the first in favour of legatees in general.''

It is to be observed that in nearly all cases the third rule of construction hereinbefore set forth is applied only where the second bequest to the same person and of equal or unequal amounts is provided for in a codicil which is attached or added to the testament. A testamentary instrument, complete in itself though not in terms revoking a prior testamentary paper, and which with the latter is admitted to probate as one will, according to all the cases, seems to show conclusively the testator's intention. Although both testaments operate, they do so merely because the latter does not in express terms revoke the former.

A codicil is defined to be ''A supplement to a will or an addition made by the testator, annexed to and to be taken as part of, a testament; being for its explanation, or alteration, or to make some addition to, or else some subtraction from, the former dispositions of the testator.

''A clause added to a will after its execution, the purpose of which usually is to alter, enlarge or restrain the provisions of the will, or to explain, confirm and publish it'': Anderson's Law Dictionary.

An examination of Mr. Jones' wills shows that a complete disposition of his entire property is made by each. Each contains a residuary clause, and, but for the provisions of section 1296 of the Civil Code, which declares that "a prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the former will; . . . . ," the last testamentary instrument executed by Mr. Jones, unquestionably, under the decisions, would have been admitted to probate as his last will. The second instrument did not expressly revoke the former; it is not a codicil but, as has been observed, is a will complete in itself, ending with the words "this is my last will." These words indicate the testator's intention, namely, that the second instrument, so far as the double legacies are concerned, should be a substitution for the first. It follows, therefore, that the bequests to S. L. Abbot the third, W. Brooks Jones and T. Skelton Jones under the latter instrument are in substitution for those contained in the former.

Second: Are the charities entitled to one-third of the estate wherever the same may be situate, and if so, is that one-third payable out of California assets?

Section 1313 of the Civil Code treats of the restrictions on the power of devise to charitable uses. It declares that ". . . . no such devises or bequests shall collectively exceed one-third of the estate of the testator having legal heirs. . . . ." The "estate" here meant must unquestionably mean the "estate" in California. It cannot be conceived that the legislature of this state would attempt to do so vain a thing as to regulate the disposition of property not within its jurisdiction; and I do not see how it can otherwise than follow as a corollary from a reading of the section last referred to that no such contention can be successfully maintained.

If it be true, then, that the legislature has dealt solely with "estates" in California, it is clear that if the property out of the jurisdiction is at all taken into account to determine what shall be the third to the charities, that more than one-third of the distributable assets in California will be distributed to them, and that such distribution is contrary to section 1313, supra.

To illustrate: Say the value of the property in California subject to distribution is $100,000. Of this amount the charities will be entitled to $33,333⅓. And assuming that the real property in Washington, D. C., and Virginia will aggregate in value $10,000. If the latter sum be added to the value of the California property, it will amount to $110,000, of which the one-third to charity is $36,333⅔. If, therefore, the latter sum be distributed to the charities, they will receive $3,333⅓ in excess of what the law declares they are entitled to.

Counsel for the charities, in support of their contention, have cited Carter v. Board of Education, 23 N. Y. Supp. 95, 68 Hun, 435; Kerr v. Dougherty, 79 N. Y. 327, and Jenkins v. Trust Company, 53 N. J. Eq. 194, 32 Atl. 208. These authorities, however, are not in point.

It is held in the Estate of Hinckley, 58 Cal. 516, 517, that "The valuation of the inventory is evidently not intended to be conclusive for any purpose. The appraisers made a preliminary estimate for the information of the court; and as property not included in the original inventory is discovered, it is made the duty of the executor or administrator to cause the value of such property also to be estimated by the appraisers: Code Civ. Proc., secs. 1445, 1451. . . . .

"Yet it must be assumed that section 1313 of the Civil Code was enacted in view of the provisions of the Code of Civil Procedure which establish the mode of conducting probate cases, since such provisions and those of the Civil Code relating to wills constitute together the statutory scheme for the settlement of the estates of deceased persons. As we have seen, the testator had the right to donate to charitable uses one-third of that which he had power to devise and bequeath. The residuum became fixed, under the Code of Civil Procedure, only when the allowed claims against the estate and costs of administration were determined and the residuum therefore, ready for distribution; that is to say, the total value of the distributable estate—the estate one-third of which may be devoted to charity—is ascertainable by aggregating the values of all the assets, real and personal, distributed, as of the date or dates of distribution."

In Re Pearsons, 98 Cal. 611, 33 Pac. 451, the court say: "The one-third of the estate which may be given to charitable

uses is one-third of the distributable assets; and a sale and conversion of the property into money, when the devise is not specific, is a convenient, if not a necessary, mode of ascertaining the amount of the estate for the purpose of determining the quantity thereof to which the charitable beneficiaries are entitled. Until a sale it cannot be determined what is the amount of the estate'': See, also, Estate of Gibson, 1 Cof. Pro. Dec. 9; Estate of Behrman, Cof. Pro. Dec.

I am constrained to hold that the charities are entitled to one-third of the distributable assets of the estate, and that in determining what that one-third is, property situate out of the jurisdiction of this court cannot be taken into account.

Third. Are the residuary devisees and legatees under the prior will entitled to all that part of the residue which the residuary clause of the subsequent will fails to dispose of?

There is no question about the fact that after the charities receive the one-third to which they are entitled by law (Civ. Code, sec. 1313), there will still remain a considerable residuum partly increased by the lapsed legacy to one of the testator's nephews—Robert Brodie Jones.

The question therefore is, Are the two residuary clauses so absolutely irreconcilable as that the former entirely fails? If they are, partial intestacy is the result, and the heirs or next of kin of the testator take in preference to his sisters who are the residuary legatees under the prior will.

As we have heretofore observed, the testamentary instruments were together admitted to probate as one will, and are therefore to be taken and construed together as one instrument (Civ. Code, sec. 1320), and the rule of construction is substantially the same where there are several wills to be harmonized, as where there are several clauses in the same will and codicils: 1 Woerner on American Law of Administration, 2d ed., sec. 51, p. 102.

Section 1321, Civil Code, provides that all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are wholly irreconcilable, the latter must prevail.

And section 1296, Civil Code, provides that the prior will remains effectual so far as consistent with the provisions of the subsequent will.

The prior will contains this residuary clause: "All the rest and residue of my estate of every kind and nature and wheresoever situate I give and bequeath to my two sisters Mary Jones and Virginia Byrd Jones, now residing in Washington, D. C., or to the survivor of them."

The subsequent will contains the following residuary clause: "I leave the remainder of my estate to Grace Church P. E. S. F., to the Protestant Episcopal Old Ladies' Home, Maria Kip Orphanage & Bishop Armitage Orphanage, one-half of said residue to the first named & the balance in equal shares to the three Institutions last named."

Now, in these circumstances, in what respect is the residuary clause of the prior will—which I shall, for convenience, hereafter call the first clause—wholly irreconcilable with the residuary clause of the subsequent will—which I shall likewise for convenience hereafter call the second clause?

It is not contended that the "second clause" is inoperative so as to deprive the charities of their one-third, but counsel for the sisters maintain that as to that part which the charities cannot take under the "second clause," the "first clause" is wholly consistent and reconcilable, for it can only operate in the event that the second clause partially fails. It might well be likened to a case where there are two wills, the first containing a residuary clause and the second none. Or where the latter clause in express terms only disposes of part of the residue. In neither case would there be an inconsistency and no less an irreconcilability. In the former case the residuary clause is necessarily operative, and in the second both will stand. The testator here impliedly bequeathed and devised to charity one-third and the remainder to his sisters.

Section 1313, Civil Code, provides, among other things, that no devises or bequests to charities shall collectively exceed one-third of the estate of the testator leaving legal heirs, and in such case a pro rata deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all such dispositions of property made contrary hereto shall be void and go to the residuary legatee or devisee, next of kin or heirs according to law.

In this case there is an excess of one-third to charities and there are residuary legatees and devisees to take that excess,

and they are certainly entitled to it preferably to the next of kin or heirs of the testator. The very fact of making a will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will.

It must be conceded that the testator knew the law at the times when the testamentary instruments were respectively executed by him, and it must follow that he was conscious of the restrictions placed by law on his bounty to charity. He likewise must have had in mind that his estate might possibly, at the time of his death, be larger than he contemplated, for he purposely left in existence a will (the first) by which, he knew, any surplus would be safely disposed of to his sisters who, as appears from both wills, were the main objects of his bounty. It seems to me that the testator's intention is perfectly clear, and that the clauses are absolutely consistent and reconcilable. A comparison of the wills unquestionably permits the court to transpose the order of these residuary bequests to have them read as follows: To (the aforementioned charities) I give, devise and bequeath one-third of the rest, residue and remainder of my estate, the balance I give, devise and bequeath to my sisters Mary Jones and Virginia Byrd Jones, or to the survivor of them.

It has been held that where it appears from the entire language of a will that the testator's intention would be rendered more clear by transposing the order of the bequests, the court will construe the bequests as though the testator had written them in the transposed order: Merkel's Appeal, 109 Pa. 235.

"Where it is possible for the court, upon a reading of the whole will, to arrive at a conclusion that the testator necessarily intended an interest to be given, which is not bequeathed by express and formal words, the court should supply the defect by implication, and so mold the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared": Estate of Maxwell, 1 Cof. Pro. Dec. 145.

A failure to give to these wills the interpretation contended for would result in partial intestacy. This is not favored in law.

Our own code provides that of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy: Civ. Code, sec. 1326. And as was said in the opinion by Mr. Justice Andrews, in the case of Vernon v. Vernon, 53 N. Y. 361, "The law prefers a construction of a will which will prevent a partial intestacy to one which will permit such result." See, also, Toland v. Toland, 123 Cal. 143, 55 Pac. 681; Estate of Fair, 132 Cal. 566, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000.

I am of the opinion that the sisters of the testator take under the residuary clause of the first will the residuum of the estate which is bequeathed to the charities by the residuary clause of the latter will, but which they are unable to take by virtue of the restrictions imposed by section 1313 of the Civil Code.

Let a decree be entered, therefore, in accordance with this opinion.

———

Although, as a General Rule, the Law Regards Gifts to Charities with favor, the legislatures of some states have, for the protection of heirs, found it expedient to enact a species of mortmain statutes which provide that a will making charitable gifts must be executed at least thirty days before the death of the testator, and that it shall not bestow more than one-third of his estate upon charities. The statute of California on this subject does not govern a will executed in that state devising real property in another commonwealth, since the transmission of real estate is governed by the law of its situs. Moreover, this statute does not apply to gifts other than those by last will and testament, such as those by deed. A codicil executed within thirty days prior to the death of the testator, but relating wholly to other matters than charitable bequests, does not invalidate gifts to charities in the original will.

A charitable gift in excess of one-third of the estate of the testator does not invalidate a power of sale contained in the will, nor does it constitute ground for a revocation of the probate of the will. The only consequence, as a rule, which follows such excessive gifts is a pro rata reduction of the amounts thereof, so that in their aggregate they will not exceed one-third of the estate. And this one-third has reference to the one-third of the estate which remains after the payment of the debts of the decedent and the charges of administration. On appeal to the supreme court, if the inventory is not set forth in

the record, and there is no bill of exceptions or data from which the amount of the estate can be determined, it will be presumed, in support of the decree below, that the residue distributed to charities was less than one-third of the distributable portion of the estate: 1 Ross on Probate Law and Practice, 17.