LAMB *et al. v.* LAMB *et al.*

(*Supreme Court, General Term, First Department.* April 17, 1891.)

</div>

1. CONSTRUCTION OF WILL—RESIDUARY CLAUSE.
   Testator devised certain real estate to his daughter Sarah for life, provided that, "should she marry and have children, I give and devise said lots at her decease to her descendants then living." Said daughter married, but died without issue. Another clause of the will provided that, if "there should remain a surplus undis-

posed of, I do give and bequeath the same unto my sons, John, George, and Anthony, and to my daughter Agnes Richards, to be equally divided between them." Testator died seised of a large personal and real estate, all of which was specifically disposed of. *Held* that, notwithstanding the use of inapt language to pass real estate in the residuary clause of his will, the whole will read together manifested an intent on the part of the testator not to die intestate as to any part of his property, and that upon the lapsing of said devise for life to his daughter Sarah the same passed to and was divisible among those mentioned in said residuary clause of his will, or their descendants.

2. PARTITION—PLEADING—JUDGMENT.

The fact that plaintiffs in a suit for partition allege themselves to be entitled to a lesser interest under the will of their testator than they are in fact entitled to under a proper construction thereof will not estop them from obtaining the benefit of a judgment of the court determining their rights to be greater than those set forth in the complaint.

3. CONSTRUCTION OF WILL—NATURE OF ESTATE.

Testator devised property to the sole and separate use of his daughter for life, "and, should she marry, and have children, I give and bequeath said lot at her decease to her descendants then living." The daughter married, and died without issue living at her death. *Held*, that she took only a life-estate under the will, and that a devise by her of said property to her husband was inoperative and void.

Appeal from judgment on report of referee.

Action by Clara A. Lamb and others against Samuel Treat Lamb and others to obtain a construction of the will of Anthony Lamb, deceased, and a partition among the residuary devisees of his estate of certain property included in a devise of the testator, which failed to take effect, consisting of two lots with improvements on Columbia street and two lots on Sheriff street in the city of New York. By the second clause of his will the testator gave his wife, Violetta, a life-estate in said premises, and by the sixteenth clause thereof he devised the same, subject to said life-estate, to his daughter Sarah for life, and to her descendants after her death. No specific provision was made for the event of Sarah's death without leaving descendants. Testator's widow, Violetta, died October 30, 1889. His daughter Sarah married the defendant Adam O. Gillespie October 31, 1857, and died September 3, 1886, leaving no descendants. By the twenty-second clause of his will the testator out of the "rest, residue, and remainder" of his "estate" makes certain specific bequests, and then in and by the twenty-third clause of his will says: "If after the payment of all these legacies there should remain a surplus undisposed of, I do give and bequeath the same unto my sons, John, George, and Anthony, and to my daughter Agnes Richards, to be equally divided between them." The defendant Samuel Treat Lamb is the Anthony Lamb above mentioned, his name having been legally changed. John and George Lamb and Agnes Richards are dead, and their descendants are parties to this action. The court below, in and by the interlocutory judgment appealed from, adjudged "that, by virtue of the twenty-third clause of the will of the testator, Anthony Lamb, upon his decease, each of his children, George C., John, Anthony, and Agnes, became entitled to and seised of an estate in remainder or reversion in fee-simple in an equal undivided one-fourth part of the property and premises made the subject of this action, after the termination of the life-estates by said will devised to the testator's widow, Violetta, and his daughter Sarah, to be converted into a contingent remainder in fee after the said life-estates by the birth of issue of said Sarah, and to be defeated by the death of said Sarah leaving issue her surviving;" and "that by the death of Violetta Lamb, the widow of the testator, and the death of Sarah Lamb, (afterwards Sarah Lamb-Gillespie,) daughter of the testator, leaving no issue surviving her, the estate in remainder or reversion in the premises described in the amended complaint, which on the death of Anthony Lamb, the testator, became vested in his children, Anthony Lamb, John Lamb, George C. Lamb, and Agnes T. Richards, has become and now is an estate in possession of fee-simple absolute in said premises." The plaintiffs' complaint alleged that the

said property was divisible among eight stocks, composed of the living children of the testator and the descendants of such as were dead, but the court ascertained their interests to be greater than those claimed in the complaint, no claim being therein set up by them to an exclusive interest in the lapsed devise by reason of the residuary clause of the will. The heirs of the testator other than those mentioned in said residuary clause and their descendants appeal from this judgment, on the ground that the testator died intestate as to said lapsed devise, and that the same is divisible among all of his heirs *per stirpes*.

Argued before DANIELS and O'BRIEN, JJ.

William B. Hill, R. W. Townsend, Spencer Clinton, Norman Dike, and Merrill & Rogers, (Alexander R. Dyett and Payson Merrill, of counsel,) for appellants. Amundson & Ward, Eugene L. Richards, Alexander & Green, G. G. & F. Reynolds, George F. Martens, and Fred. A. Ward, (Edwin C. Ward and Eugene L. Richards, Jr., of counsel,) for respondents.

O'BRIEN, J. Seldom is difficulty found in determining the rules that should govern in cases involving the construction of wills, but when we attempt to apply those rules to a given case the difficulty at once becomes manifest. The present furnishes a good illustration. The referee in his opinion correctly states the facts and the questions in controversy as follows: "This action is brought for the partition of certain real property situated in the city of New York. All parties claim through one Anthony Lamb, who died in May, 1885, seised of the premises in question, and leaving him surviving five children, and the descendants of four other children, who died in his life-time. By the will he devised the property in question to his daughter Sarah, subject to a life-estate therein in favor of the testator's wife, Violetta. The language of the devise to his daughter Sarah is that she ' have and hold the same, with the rents, issues, and profits thereof, during her natural life, for her sole, separate, and peculiar use, and, should she marry, not to be liable for or charged with the debts of her husband; and, should she marry and have children, I give and devise said lots at her decease to her descendants then living; if more than one, to be divided among them in the same manner as if she had died seised of the same intestate; but, if only one, then to such only descendant.' Sarah Lamb thereafter intermarried with the defendant Adam O. Gillespie, and departed this life September 3, 1886, childless, having made a will, whereby she devised and bequeathed all her property, real and personal, to her husband. Violetta Lamb died in October, 1889. The important question for consideration in this suit is whether the said real property, upon the death of Violetta Lamb, and by reason of the prior death of Sarah Lamb-Gillespie without leaving any children, became part of the residuary estate of Anthony Lamb, or whether there was an intestacy as to this portion of his property; and, if so, what right or interest therein does the defendant Adam O. Gillespie take by reason of the will made in his favor by Sarah L. Gillespie? It is evident from a perusal of the will of Anthony Lamb that almost every possible contingency was provided for, except the one that actually occurred, namely, the decease of Sarah L. Gillespie without leaving children; and the language of the will in those clauses which apparently refer to the ' rest, residue, and remainder ' of the testator's estate, after the specific devises to his children had been made, does not use the word ' devise,' but apparently contemplated only a division of certain personal property. It is therefore claimed that the property in question cannot fairly be included in that residue of the estate which was in the testator's mind at the time of the execution of his will. I am, however, of opinion that under the law of this state this property forms part of the residuary estate." The learned referee bases his conclusion on the cases of *Floyd* v. *Carow*, 88 N. Y. 560; *Riker* v. *Cornwall*, 113 N. Y. 115, 20 N. E. Rep. 602; and *Cruikshank* v. *Home*

*for the Friendless*, 113 N. Y. 337, 21 N. E. Rep. 64. These contain a review of the earlier cases, and, apart from their able, studied, and careful treatment of the questions involved, are the latest, and, so far as applicable, the controlling, authorities. We can, therefore, as did the referee, after a statement of the facts in this case, rest our conclusion upon the principles laid down in those cases.

An examination of the will shows it to be, as claimed, an exceedingly well and carefully drawn instrument, and a masterpiece of thoughtful foresight and technical precision. It was evidently prepared by a skillful lawyer, and is in every respect a model will. In it every word is used in its accurate and legal sense, and in its proper technical connection. Every point is covered, and every contingency provided for, so far as human foresight could accomplish. Wherever real estate is sought to be affected, the language is of the utmost technical precision, and where only personal property is sought to be affected the language used is strictly accurate. The testator, besides much personal property, had a great many different and distinct parcels of real estate, each one of which was specifically devised to particular persons. At first blush it might seem as if no portion of this real estate was intended to form part of the residuary estate. This view is strengthened by the absence in the residuary clause of technical words strictly applicable to real estate, and inferences that can be drawn from other parts of the will as instanced by the clause marked "Seventhly." This clause, after directing the conversion of the real estate in Pearl street into personalty, in trust for his son Anthony, further directed that, in case his son Anthony should die without leaving any descendants, then the said "principal sum shall revert to and form part of my residuary estate." As we find no similar provision with reference to the devises made of the balance of the real estate, the rule of *expressio unius est exclusio alterius* would seem to be applicable. Again, we find that the devises made are everywhere accompanied by the same language, creating the same estates. It would thus follow that any other parcel of real estate devised to children or grandchildren would, as in the case of his daughter Sarah, upon a failure of any of the conditions on which it was limited, fall, as it is claimed this does, into the residuary. Those, after all, are but arguments, drawn, it is true, from the will itself, but which are answered by other provisions of the will, and by principles which must be held to outweigh them.

As has been oft repeated, the intention of the testator is first to be ascertained and then carried out. Such intention is to be determined by the entire instrument, and, when ascertained, "it is the pole-star by which courts must be directed in the administration of justice." *Van Kleeck* v. *Dutch Church*, 20 Wend. 457. The presence in the residuary clause of language more peculiarly applicable to personalty than to real estate, is not controlling, nor the fact that we there find no technical words of descent or power of sale. If the real meaning and intention of the testator, and his plain and definite purposes, are endangered by inapt or incorrect modes of expression, and we are sure that we know what the testator meant, the court may reject words and limitations, supply them, or transpose them, to get at the correct meaning. *Phillips* v. *Davies*, 92 N. Y. 204; *Pond* v. *Bergh*, 10 Paige, 140. Where an intention, therefore, is apparent, little weight is to be given to arguments based upon the use of inapt phraseology. The main reliance of the appellants in claiming that the residuary clause does not cover this land is the failure to use apt or technical language upon the part of the testator. As stated, however, no matter what words a testator uses to express his intention, that intention, when it can be ascertained, must govern. *Allen* v. *White*, 97 Mass. 504. The care observed by the testator in providing for every possible contingency shows that he had no intention of dying intestate. It may be true that it did not occur to the testator that any portion of

his real estate, which he had specifically devised with limitations over, would lapse, so as to fall within the residuary estate. Nevertheless the residuary clause is sufficiently broad in its language and scope to embrace either real or personal property or both, and the intention of the testator is sufficiently clear to justify the conclusion that all his property, both real and personal, which for any reason should fail to take effect, or lapse, should constitute a portion of such residuary estate. His language thrice repeated is: "All the rest, residue, and remainder of my estate." As said by Lord CAMPBELL in the case of *O'Toole* v. *Browne*, 3 El. & Bl. 572: "The rule is well settled * * * that the word 'estate' in the will is sufficient to carry real as well as personal estate, and that this force is to be given to it unless something appears upon the will to show that it was used in a less extensive signification;" and again: "Although there be no indicatory words intimating expressly an intention to dispose of the whole of this property, real and personal, is there anything to show that he meant to die intestate as to real estate, if he had any? Reliance was placed upon the absence of the word 'devise,' which is technically applicable to real estate; but the words 'give' and 'bequeath' are quite sufficient." The rule thus stated, which prevails in England, is similar to the one which is applied in this state. In case of doubt the law prefers that construction which will prevent a partial intestacy to one which will uphold it. *Vernon* v. *Vernon*, 53 N. Y. 351; *Thomas* v. *Snyder*, 43 Hun, 14. It is likewise well settled in this state that a general residuary clause includes all property of the testator not otherwise disposed of, and that there is no difference between lapsed legacies and lapsed devises as respects the operation upon them of a general residuary clause. The presumption is that a general residuary clause includes everything not otherwise well disposed of, and the burden rests upon the heir at law or next of kin to show that the testator did not intend his residuary clauses to include such property. As said by ANDREWS, J., in *Floyd* v. *Carow*, 88 N. Y. 567: "A general residuary devise carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will or the residuary devisee will take." In *Riker* v. *Cornwall*, 113 N. Y. 115, 20 N. E. Rep. 602, GRAY, J., says: "A general residuary clause, not circumscribed by clear expressions in other parts of a will, includes any property or interest of the testator which are not otherwise perfectly disposed of, and all that for any reason eventually falls into the general residue." The general scope of the will under consideration and the general scheme disclosed by it negative the idea that the testator intended to die intestate, either as to the residuary real estate generally, or as to this particular property or any reversionary interest therein. By this will the testator meant to dispose of his whole property of every kind. There certainly is no clear indication of any contrary intention. The language used in reference to his residuary estate is general, and in no way restricted. While he may have failed to recognize that certain possible interests in real estate might not vest, still the general intent is apparent in the residuary clauses to dispose of whatever was left, whatever it might be. Words indicating a particular consideration of each item or class of property are not essential. Language showing the general intent is all that is necessary. We do not find any limiting words in the residuary clause confining it to any particular fund or description of property, or to any certain residuum which is present in the cases relied upon by appellants.

Having, therefore, reached the conclusion upon the reading of the will itself that the property involved passed under the residuary clause, it remains only to consider what weight should be given to the arguments derived from the circumstances that certain of the respondents, upon the accounting of the executors, and by the allegations in their complaint, in this action occupy a

different position from that which by the judgment is secured to them. It would be a harsh rule indeed, in a proceeding for an accounting taken by executors or in an action brought for the construction of a will, to apply the doctrine of estoppel so that parties who, in ignorance of their rights and of their legal position, by honestly setting forth what they regarded their interests in the litigation to be, should thereby be prevented from obtaining the benefits lerived from a judgment in their favor, which determined that their interests were greater than originally claimed by them. When we consider the charcter of executors' proceedings upon an accounting, or the nature of an action brought for the construction of a will, persons who submit their rights to the court, accompanying them, it may be, by a statement of their claims, should not thereby be estopped from subsequently obtaining the benefit of a judgment which determines that their rights are greater than those originally claimed or asserted by them.

Another question passed upon by the referee related to the claim advanced by the defendant Adam O. Gillespie. His failure to appeal would justify our omitting all reference to his contention; but it may be as well to dispose of the issue of law raised on his behalf. He claims that the fee in the lots in question immediately on the death of Anthony Lamb vested in the children and heirs at law of Anthony Lamb, subject only to the devise in favor of and upon the birth of children to his wife, Sarah, and that, the fee having so vested, Sarah could devise her one-ninth interest in the lots to him. This contention cannot be sustained, whether the conclusion reached is that this property passed to the residuary devisees, or by reason of intestacy went to the heirs at law, for the reason that the will gave to Sarah a life-estate only, and that in the whole premises. She was not to have, therefore, a fee in one-ninth. Having but a life-interest, there was no interest to pass under the will to her husband. The judgment of the referee should therefore be affirmed, with costs and disbursements.

DANIELS, J., (concurring.) I think the testator intended to include real as well as personal property in his final directions. What he referred to was his estate, and that aptly included all he had to finally dispose of, whether personal or real property. The judgment should be affirmed.