### PRESUMPTION AGAINST INTESTACY.

Common Pleas Court of Cuyahoga County.

W. Scott Robinson, Executor of the Estate of M. Louise Bowler, Deceased, v. John T. Robinson et al.

Decided, January 27, 1913.

*Wills—Residuary Clause May Be Followed by Other Bequests—Partial Wills Almost Unknown, and a Presumption Arises Against Intestacy as to Any Part of an Estate—Words and Phrases.*

1. The will of B provided in one of its clauses that "all of my effects and household goods not mentioned above is to be divided between," etc. *Held:* That said clause is residuary, notwithstanding it is followed by other bequests.
2. The doctrine of *ejusdem generis* is limited in its application to clauses not residuary, and the word "effects" as above used is therefore not limited to property of the same general character and description as household goods.
3. Where a provision in a will is equivocal or of doubtful or uncertain meaning, the terms of the residuary clause will be so construed as to prevent intestacy; and this rule gives to the children in this case the entire estate share and share, except the specific legacies named therein.

Neff, J.

This case involves the construction to be given to the last will and testament of M. Louise Bowler. Plaintiff alleges his appointment and qualification as executor of the last will and testament of M. Louise Bowler; that the testatrix died on the 24th day of October, 1909; that the will in question was duly admitted to probate in the Probate Court of Cuyahoga County. It is also averred that the estate of the testatrix is of the value

of about ten thousand dollars, and that all the debts of the estate have been paid; that decedent left no husband; that the persons named in the petition are the only heirs at law of the testatrix.

A doubt has arisen as to the proper meaning and effect to be given to the clause of the will to which reference will be made later; that the executor is uncertain as to the proper construction to be given to such clause, and prays that the court may, by its decree, give direction to the plaintiff in regard to the true construction of said will, and the proper execution of the executor's trust, and as to what the plaintiff's duties are in the premises.

A copy of the will is attached to the petition, from which it appears that the instrument in question was executed in the month of July, 1903, the exact date of the execution of the will not otherwise appearing.

The will provides that, after paying the funeral expenses, she gives to various persons divers sums of money ranging from $250 up to $1,000. She then gives to other relatives certain articles of jewelry, and then comes the clause which requires construction, which is in the language following:

"All of my effects and household goods not mentioned above is to be divided equally between the said C. Courtland and Kenneth Draper Means, as my executors think proper. If said property is sold, said children shall share and share alike in said proceeds."

That is followed by these bequests:

"I give to my grand-nephews, Charles Henry and Clinton S. Robinson, $250 each."

The case was submitted in the first instance upon the following agreed statement of facts:

"The testatrix, M. Louise Bowler, was not at the time of executing her said will the owner of any real estate, nor was she seized of any real estate at the time of her death.

"2. At the time of executing her said will she was the owner of a block of stock in a corporation organized for the purpose

of owning and dealing in real estate, and which corporation was the owner of certain real estate in Cuyahoga county.

"3.   That said testatrix had disposed of substantially all of said stock before her death.

"4.   That Exhibit A hereto attached is a complete list of the personal property of said testatrix at the time of her death, excepting articles specifically bequeathed in her will.

"5.   That the sum of $8,820.15 shown in said statement being cash on deposit in the Society for Savings, is a part of the proceeds of said shares of stock."

There is then a list set out of all the items of personal property belonging to the decedent testatrix, at the time of her death.

It being uncertain as to how much money the testatrix had on deposit at the time of the execution of the will, upon the suggestion of the court a supplemental agreed statement of facts was submitted by counsel, from which it appears that at the time of the execution of the will the testatrix had on deposit in the Society for Savings $2,075.24.

On the 18th day of April, 1904, the testatrix, in her own handwriting, wrote upon the face of the will these words:

"Remainder of my        all of my real estate, of whatever nature, I want divided equally between my brothers, John T. and W. Scott Robinson."

The words "of my real" were erased, but not so completely but that they are somewhat legible.

This change appears to have been made in the handwriting of the testatrix. The testatrix, however, owned no real estate, either at the date of the execution of the will or at the time of her death. The only property which she owned which savored in any degree at all of realty was a block of stock in a corporation organized for the purpose of owning and dealing in real estate, such corporation being the owner of certain real estate in Cuyahoga county.

In addition to such block of stock, the testatrix, at the time of her death, owned household goods, certain articles of jewelry, and had the sum of $8,820.15 on deposit in the Society for Savings.

The claim of the plaintiff is, that the clause in question does not dispose of the stock held by the testatrix; and that, as to such stock and the amount realized from its sale, the decedent died intestate.

On the other hand, the claim of C. Courtland Means and Kenneth Draper Means is, that by the clause of the will in question such stock and the avails of such sale of stock were devised to them, and that therefore the decedent did not die intestate as to any of her property.

Stated with more particularity, the claim of the plaintiff is as follows: That the word "effects," as it appears in this clause, is used in immediate connection with the words "household goods," and that the context shows that the doctrine of *ejusdem generis* applies and limits the meaning of the word "effects" to property of the same general character and description as household goods. Second, that the clause "if said property is sold, said children shall share and share alike," could manifestly not apply to money on deposit in the bank, which could not be the subject of sale. Third, that the attempted but ineffectual effort to change her will, made by decedent on April 18th, 1904, shows that the decedent did not conceive that by the terms of the clause in question she had disposed of the shares of stock which she owned at the time of the execution of the will in July, 1903. Fourth, that the clause in question is not residuary, because it is followed by other bequests.

On the other hand, the two defendants above named contend that the clause in question is residuary, that it comprehends all the decedent's effects not mentioned in the will. Second, that as this clause is residuary in its character, the doctrine of *ejusdem generis* does not apply. Third, that the specific provisions of the will disposed of only about one-fifth of decedent's estate; and that to give the construction contended for by plaintiff would result in holding that decedent died intestate as to four-fifths of her estate. Fourth, that the presumption is that the testatrix intended to dispose of all her estate. Fifth, that in any event the language of the clause in question is equivocal, and that the presumption against intestacy would

require that any doubtful terms of the will should be given such construction as would prevent intestacy.

The primary duty of the court is to ascertain the intention of the testator. When that is found, of course that controls.

To do this, the court should give to the language employed in the will its plain and ordinary meaning. The words used are, however, to be construed with reference to their context. And in construing a will, the court is, if such a course be reasonable, so to construe particular provisions of the instrument as to give reasonable effect to all of its provisions.

The first thing to be determined is the meaning of the word ''effects.''

Black, in his law dictionary, on page 409, defines effects to be personal estate or property. This word has been held to be more comprehensive than the word ''goods,'' as it includes fixtures, which ''goods'' will not include. In wills, the word ''effects'' is equivalent to ''property'' or ''wordly substance,'' and, if used· *simpliciter*, as in a gift of ''all my effects,'' will carry the whole personal estate. The addition of the words ''real and personal'' will extend it so as to embrace the whole of the testator's real and personal estate. This is a word often found in wills, and, being equivalent to ''property,'' or worldly substance,'' its force depends greatly upon the association of the adjectives ''real and personal.'' ''Real and personal effects'' would embrace the whole estate; but the word ''effects'' alone must be confined to personal estate simply, unless an intention appears to the contrary.

Standing alone, the word ''effects'' is undoubtedly sufficiently comprehensive to include shares of stock. This is conceded by the plaintiff. Plaintiff contends that, inasmuch as the word ''effects'' is followed by the words ''and household goods,'' such additional words serve to show that the word ''effects'' was used in a restrictive sense, or, in other words, that the doctrine of *ejusdem generis* has application. This would certainly be true if the clause in question is not residuary.

In the case of *Arthur* v. *Morgan*, 112 U. S., 499, Mr. Justice Blatchford, in the course of the opinion, uses this language:

"The word 'effects' means 'property or wordly substance.' When it is accompanied, in a will, by words of narrower import the bequest, if not residuary, may be confined to species of property *ejusdem generis* with those previously described."

I think it must be manifest, on principle, that the doctrine *of ejusdem generis* must be restricted in its application to clauses which are not residuary. The office of a residuary clause is to dispose of the residue of the estate, whatever the character of such residue may be.

In the case of *Morton* v. *Woodbury,* 153 N. Y. Reports, 243, the first branch of the syllabus is as follows:

"*Will—Residuary Legatee.*—No particular mode of expression is necessary to constitute a residuary legatee; it is sufficient if the intention of the testator be plainly expressed in the will, that the surplus of his estate, after payment of debts and legacies, shall be taken by a person there designated.

"2. *Position of Residuary Clause.*—While the residuary clause in wills is usually the last of its disposing provisions, still, the mere fact that it is not the last, is not of controlling consequence, and can have no effect except as it bears upon the question of the intent of the testator."

In support of the syllabus, the court, on page 251 of the opinion, cites *Williams on Executors* (7th Am. Ed.), 801; *1 Jarman on Wills* (6th Am. Ed.), 724.

In the *7th Volume of Words & Phrases Judicially Defined,* page 6168, is found the following language:

"A residuary clause in a will is a clause which operates to pass all of testator's property not previously disposed of, and it includes legacies which may lapse by events subsequent to the making of a will, or property covered by illegal legacies, or legacies which for some reason are prevented from taking effect." Citing *Riker* v. *Cornwell,* 113 N. Y., 115.

"A general residuary clause includes all property of the testator not otherwise disposed of. The presumption is that it includes everything not otherwise disposed of, and the burden rests upon the heir at law or next of kin to show that the testator did not intend his residuary clause to include such property. It carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded, and, when

not circumscribed by clear expression in other parts of a will, includes any property or interest of the testator not otherwise perfectly disposed of, and all that for any reason eventually falls into the general residue." Citing *Lamb* v. *Lamb,* 14 N. Y. Supp., 206, 210.

"A residuary legatee is a legatee who is given all the residuum of a testator's estate after specific devises and bequests have been made therefrom." Citing *Lafferty* v. *Peoples Savings Bank,* 43 N. W., 34, 36.

It is contended, however, that the clause in question is not a residuary clause, because it is followed by an additional bequest. Ordinarily and naturally the residuary clause is the last clause of the will; but as already indicated in the syllabus of the Morton case, 153 N. Y., 243, this is not a controlling consideration.

In *Jarman on Wills,* Vol. 1, page 1029, bottom of the page:

"A gift of household goods, furniture 'and all other effects' is sufficient to pass the general personal estate, although it is followed by pecuniary and specific bequests, and even although specific bequests are given to the person who takes the residue under the general gift."

In support of the doctrine enunciated in the text, the author cites *In bonis Shepheard,* 48 L. J. Pr., 62; *Fleming* v. *Burrows,* 1 Russ., 276.

In the case of *Hodgson* v. *Jax,* 2 Ch. Div., 122, the syllabus is as follows:

"Where a testatrix, after devising certain freehold property, bequeathed to her sister for life, with remainder to her brother's children, 'all of my furniture, plate, linen, and other effects that may be in my possession at the time of my death,' she was at the time of her death entitled to the property devised to her by her will, to furniture, plate, linen, wearing apparel, jewelry and certain sums of money. *Held:* That the defendants were entitled to the residuary personal estate of the testatrix. Jessel, M. R., says:

"I am of the opinion that, under this gift, the residuary personal estate of the testatrix must be taken to pass. The words are 'all my furniture, plate, linen, and other effects that may be in my possession at the time of my death.' It is alleged

that the words 'other effects' are to be cut down so as to mean that which is something like furniture, plate or linen; but the answer is that the words of a will ought to have their natural meaning given to them, unless there is some contrary intention appearing in the will. The mere fact that the testatrix enumerates some items before the words 'and other effects,' does not alter the proper meaning of those words.

"The demurrer must be overruled."

I think it results that the position of the clause in a will is not determinative of the question as to whether the clause is residuary, but that that must depend upon the terms used. And inasmuch as the word "all," which is the most comprehensive word in the English language, perhaps, is used in this clause, I am disposed to hold that the clause is residuary in its character, and that therefore the doctrine of *ejusdem generis* would not have controlling application.

Various cases have been cited by counsel on both sides which bear by analogy upon the question as to the proper construction to be given to the language of the clause in question.

In 13 Vesey, Jr.'s, Reports, page 39, the case of *Rawlings* v. *Jennings*, the syllabus reads:

"To the word 'effects' in a will restrained to articles *ejusdem generis* with those specified; though the consequence was a residue undisposed of."

Sir William Grant, Master of the Rolls, observes that the terms of the will are very obscure. In the course of the opinion he says:

"The second question arises upon the widow's claim of the whole residue of the personal estate, as passing to her under the general word 'effects.' That claim can not be sustained. Part of his property being particularly given to her afterwards, the word 'effects' must receive a more limited interpretation, and must be confined to articles *ejusdem generis* with those specified in the preceding part of the sentence: viz, household furniture."

In the case of *Howes* v. *Seagoe*, 2 Weekly Reporter, 597, the syllabus reads as follows:

"A testator gave certain specific property, the lease of premises occupied by him in his trade, and effects, to his wife for life, to be accepted by her subject to payment of debts, etc.; and gave certain real estate to his executors, on trust to sell, the proceeds to form part of his residuary estate; and as to all the rest and residue of his estate, of whatever nature, etc., to his next heirs therein equally. Upon the question whether the word 'effects' included the residue—*Held*: That it did not; that the word 'lease' took in all comprised in the lease, and that the charge was a general one."

Kindersley, V. C., in the opinion says:

"The first question was as to the word 'effects.' That word was capable of meaning all of a testator's estate—at all events, all his property; but it was here used in a somewhat singular manner as to its immediate antecedents, but not as to all in the same sentence. Immediately afterwards he proceeded to dispose of other real and personal property, showing that he did not consider that he had disposed of all his property; and that appeared in the several gifts that followed, and therefore it was clear that it did not include the residuary bequest; the chief peculiarity being, that he interposed the lease of the premises occupied by him, etc.; and therefore his honor's opinion was, that the word 'effects' did not prevent the subsequent residuary bequest."

In *Estate of William Lippincott*, 73 Pa. St., 368, the syllabus is as follows:

"When a testator enumerates particular kinds of chattels and couples with them the words 'effects,' or equivalent words, the generality of his expression is to be restricted to such species of property as are *ejusdem generis* with the particular words.

"A bequest of 'my jewelry, wearing apparel, and personal effects, except such of the same as are herein otherwise disposed of,' does not include furniture in the testator's dwelling, where the excepted articles 'otherwise disposed of' were associated with the person of the testator."

The court, in the course of the opinion, speaking by Ashman, J., says:

"In choosing the word 'effects,' he used a word of the widest scope, which, as Lord Mansfield said 'is synonymous with worldly

substance' (*Hogan* v. *Jackson*, 1 Cow., 299), and which, therefore, embraces every form and species of personal estate, and has even, in exceptional cases, passed realty. When a testator accompanies a word of general meaning, like 'effects,' with particulars which are embraced within that meaning, he is influenced by one of two motives—a fear that the particulars may be overlooked, or an intent to restrict the meaning of the general word. It is very certain that this decedent was not actuated by the former consideration; he knew that if he gave his effects to the legatee, he gave her all the personalty he possessed, and he would hardly commit the superfluous folly of particularizing his jewelry and clothing. But, while he could not increase a term which was universal, he could diminish it. And he did this in a double way; by associating it with particulars, and by prefixing to it the adjective 'personal.' The phrase 'personal effects' has obtained, by frequent use, as distinct a defined meaning as the phrase 'household effects.' It designates articles associated with the person, just as the opposite phrase denotes articles belonging to the house. But it gets this meaning by being contrasted with household effects, as when the testator bequeaths his personal and household goods. In this instance, the testator intended to give, specifically, only his personal belongings, and not those of his house, and he did it by connecting personal effects with articles so intimately personal to himself as his jewelry and apparel."

Of course there were two modes of representation used, and the court held that the word "effects" must be restricted to these, when it is associated with other property together with the use of the adjective "personal," and it is this second feature that distinguishes the case in some measure from the case at bar.

In Roper on Legacies, page 280, the text-writer calls attention to the case to which I have already referred as having been decided by Sir William Grant.

"In that case A bequeathed to his wife B an annuity of 200 pounds, part of money he then had in bank security; and thus proceeded, 'together with all my household furniture and 'effects' of what nature or kind soever that I may be possessed of at the time of my decease.' The residuary personal estate being otherwise undisposed of was claimed by B under the word 'effects,' etc. But Sir William Grant determined that the

claim could not be sustained, observing that as *part* of the property was particularly given to B, the word 'effects' must receive a more limited interpretation, and must be confined to articles *ejusdem generis* with those specified in the preceding part of the sentence, viz., household furniture.

"But in *Campbell* v. *Prescott* the court would not confine the import of the word 'effects' to articles *ejusdem generis* with those preceding it, and for the reasons after mentioned. There the bequest was of 'all the testator's sugar house, cupola, and merchandise, stock with jewels, plate, household goods, furniture and all effects whatsoever.' The next of kin claimed the general residue as undisposed of, there being no other words to comprise it. But the same judge, who decided the last case, determined that the surplus passed by the word 'effects.'

"It is obvious that the terms of the above bequest were residuary, and that the testator meant to make a general disposition of his personal estate, in doing which he (as is usual) merely enumerated some of its particulars, concluding in the extensive language of 'all his effects whatsoever.' There was no reason, therefore, in this, as there was in the preceding case, to restrain upon inference of intention the natural import of the term 'effects,' to particulars *ejusdem generis* with those previously enumerated.

"A similar instance occurred in the case of *Michell* v. *Michell*. There the testator devised to his two daughters a house and premises; also a garden and orchard, and 'all his plate, linen, china, household goods and furniture, and effects that he should die possessed of,' making no other disposition of his general personal estate. The court held that the word 'effects' was in a sense detached from the proceding parts of the sentence, and was used by the testator to include the *whole* of his personal property. Or, in other words, the testator adopted the term 'effects' as the most comprehensive expression he could devise to include the disposition of all his personal estate."

These cases referred to by Roper illustrate quite vividly the contradictory character of the adjudications upon this general subject.

Page on Wills, Section 478:

"The word 'effects' is one used *prima facie* to denote personal property only. A bequest to one person of such 'goods, books, clothing, furniture, etc., that he may desire' and giving to others 'the balance of the personal effects,' passes to the last

named beneficiaries the entire personal property of testator except such as is taken by the first beneficiary.

"The context, however, may show the testator did not intend by the word 'effects' to pass the whole of his personalty. This intention may be shown by the words descriptive of the property with which 'effects' is associated. Thus a gift of 'all my jewelry, wearing apparel and personal effects' was held not to include furniture and pictures. Nor does a gift of 'household furniture and effects' pass jewelry.

"Testator's intention to restrict the meaning of 'effects' may also be shown by other directions in his will. Thus a provision for the sale of testator's 'effects' was held to show that testator used 'effects' as including only property which was in fact subject to sale. Hence money, credits and the like were excluded.

"While the word 'effects' *prima facie* applies to personalty only, it is not a word of rigid meaning, and may be used so as to include realty if the context shows testator's intention so to use it. Thus a devise in which the article of the gift is referred to as 'furniture, goods, chattels and effects' in one place, and in another as 'furniture and moneys or any property,' was held to pass testator's real estate. In this case, however, any other construction would have left the testator intestate, practically. as to all his property."

It will be observed that this section, like most quotations or extracts from text writers, "cuts both ways," and is evidently all very unsatisfactory, because cases cited there are contradictory.

In *In the Matter of Final Judical Settlement of the Accounts of Mortimer F. Reynolds, as Executor,* 124 N. Y. Reports, page 388, the first and second branches of the syllabus are as follows:

"It seems that general words, following an enumeration of articles in the residuary clause of a will, are to be given the broadest and most comprehensive meaning of which they are susceptible, in order to prevent intestacy as to any portion of the testator's estate.

"Except, however, in a residuary clause or where the will contains no such clause, when certain things are named in a devise or bequest, followed by a phrase, which need not, but may be, construed to include other articles, it will be confined to articles of the same general character as those enumerated."

The second branch of this syllabus seems to indicate that if the clause be residuary in its character, the doctrine of *ejusdem generis* has no application.

In the course of the opinion, on page 398, the court speaking by Parker, J., says:

"Applying then the rule of construction deducible from the authorities, it may be conceded that if there were no residuary clause in the will, so that as to the money and securities of the amount and value of twelve thousand dollars, Abelard Reynolds would have died intestate, unless it should be held to have passed by the bequests the words 'and personal property in and upon the same or in any manner connected therewith' would be given the most comprehensive meaning of which they are susceptible for the purpose of preventing intestacy as to a portion of the estate."

2 Courts of Probate & Divorce, Law Reports, 1869-72, *In the Goods of Joseph Edward O'Loughlin,* page 101, the syllabus reads as follows:

"A testator left to A whatever money remained at his agent's and also any money that might result from the sale of his effects, *Held*: That A was not entitled to administration as a residuary legatee."

In the opinion, page 102:

"Lord Penzance. The words are, *money that may result from the sale of my effects*. Effects must mean, therefore, something that may be sold, but a legacy would not be included in such a definition. I think by the word *effects,* the deceased alluded to that portion of his property only which was subject to sale."

1 Law Reports, Probate Division, 1891, page 300, *In the Goods of Jupp*:

"A testator bequeathed to his wife 'all my furniture, jewelry, pictures, wearing apparel, and other effects belonging to me at the time of my decease.'

"The will went on to make specific bequests to his wife of money, shares, securities, etc.; and it directed her to pay his debts, and it left it to her discretion whether she would provide

for his son and ·daughters by a previous marriage and a nephew. It contained no bequests to any other person:

"*Held*: That the words 'all other effects' constituted his wife residuary legatee."

"JEUNE, J.   I think this case a stronger one than those mentioned.   Here you have clear words, 'all other effects,' and they are not cut down by any principle of *ejusdem generis*, nor by any specific bequests to other persons.   They must be taken, therefore, in their full sense."

In the case of *Reimer's Estate*, 159 Pa. St., 212, the second branch of the syllabus:

"The words 'personal effects' in a will, when not restricted by the ·context, mean everything embraced within the description 'personal property.'

"Testator, after providing that his debts and funeral expenses should be paid, directed 'that the whole of my estate remaining shall be divided as follows:    First.    I· give ·and bequeath to my brother, Andrew, any and all of my household goods, books, clothing, furniture, etc., that he may desire.    The balance of the personal effects to be divided among the children of my sister Mary.'   After directing his executors to accumulate rents to the amount of $5,000 for a monument, he ·continued: 'After which I direct my real estate to be divided as follows:' Then followed six devises of real estate, which included all of the real estate.   *Held*:   That the second sentence ·of the first clause of· the will was residuary in character, and that all of the testator's personal property except the household goods, books, etc., bequeathed to his brother, should be distributed to the children of his sister Mary."

On page 218 of the opinion, the court, quoting from 91 Pa., 507, says:

" 'From all this it would appear that the testator did not intend to die intestate as to any portion of his property, real or personal, and this intention must govern, unless there is something in the devise itself which forces us to a different conclusion; for it is a rule long and well settled that a will must be so construed as to avoid a partial intestacy unless the contrary be unavoidable.'   Applying this doctrine to the facts of that case, this court held that the residuary clause of that will, which directed the executors to sell all the rest and residue of his estate and pay the proceeds to a certain legatee, included money

which had accrued as dividends on bank stocks and was not a subject of sale.''

The cases to which I have referred are plainly irreconcilable. I am of opinion, however, that the doctrine of *ejusdem generis* is limited in its application to clauses not residuary; and I think such limitation is supported both by reason and authority. I am also of the opinion that the clause in question is residuary, notwithstanding the fact that such clause is followed by other bequests. To hold that the clause in question is not residuary, would be to reject the word ''all'' entirely, and to attach no significance to it. I am possibly influenced to some extent, in arriving at this conclusion, by the presumption which is universally entertained against intestacy, of which, however, later.

We should next proceed to consider the effect to be given to the following clause in the will: ''If said property is sold, said children shall share and share alike in said proceeds.''

Money can not be the subject of sale. The agreed statement of facts, however, shows that at the date of the execution of the will, the testatrix had $2,075 in money, while the shares of stock were of the value of from six to eight thousand dollars. The fact that the amount of money is inconsiderable as compared with the value of the stock, would tend to diminish the effect contended for as to this clause.

Next, what light is thrown upon the proper construction to be given to the clause in question by the attempted change of the will by testatrix? Plaintiff claims that this attempted change shows that testatrix believed she had not disposed of the shares of stock by the clause in question. There is force in this suggestion, but the force of this suggestion is diminished by the consideration that the attempted change is equally consistent with the supposition that, conceiving that she had given to her grand-nephews the stock in question by the general clause, she decided to change her will in that respect and give these shares of stock to her brothers. This latter consideration, of equal force, I think, to the former, reduces the evidential effect of the first suggestion to zero, for her act in thus attempting to change her will is easily referable to either hypothesis.

628     CUYAHOGA COUNTY COMMON PLEAS.

Robinson v. Robinson et al.          (Vol. 13 (N.S.)

We will next proceed to consider the effect to be given to the presumption against intestacy.

*Schouler on Wills*, page 239, Section 490:

"No presumption of an intention to die intestate as to any part of his property is allowable when the words of a testator's will may fairly carry the whole; for no one is supposed to make his will without meaning to dispose of all his estate. It is further to be presumed that a general residuary gift will carry particular property not otherwise disposed of."

*Collier* v. *Collier's Executors*, 3 O. S., 369, at 374:

"It is a settled rule of construction, that a testator is never presumed to intend to die intestate as to any part of his estate to which his attention seems to have been directed; and a court of equity will put such a construction upon equivocal words as to prevent such a result."

*Davis* v. *Corwine*, 25 O. S., 668, at 675:

"Another rule applicable to the interpretation of wills is that the testator will not be presumed to have intended to leave any of his estate undisposed of."

*Merrick* v. *Merrick*, 37 O. S., 126, at 131:

"But a testator is not presumed to intend to die intestate as to any interest in his property to which his attention seems to have been directed."

*McKelvey* v. *McKelvey*, 43 O. S., 213, at 219:

"A testator is not presumed to die intestate as to any part of his estate."

*Jarman on Wills*, page 1030:

"When a man makes a will, he is presumed not to intend to die intestate as to any part of his property."

*James Woodside's Estate*, 188 Pa. St., 45:

"A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a

will which will avoid a partial intestacy, unless the contrary is unavoidable.''

*Matter of Miner,* 146 N. Y., 121, at 131:

''The rule of construction requires of the court, in dealing with the language of a residuary gift which is ambiguous, that it should lean in favor of a broad rather than of a restricted construction; for thereby intestacy is prevented, which it is reasonable to suppose testators do not contemplate.'' *Lamb* v. *Lamb,* 131 N. Y., 227.

In the case of *James Woodside's Estate,* 188 Pa. St., 45, the court, in the syllabus, states the doctrine to be:

''A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a partial intestacy unless the contrary is unavoidable.''

In the case of *Lamb* v. *Lamb,* 131 N. Y., 227, in the first syllabus the court expresses the doctrine thus:

''In the interpretation of a will, a residuary clause the language of which is ambiguous is to be given a broad rather than a narrow construction, so as to prevent intestacy, and a general residuary clause carries every interest whether known or unknown, immediate or remote, unless it is manifestly excluded; the intention to include is presumed, and an intention to exclude must appear from other parts of the will.''

In the 146 N. Y., *In the Matter of the Probate of the Last Will and Testament of Asher W. Miner,* reported at page 121, the second syllabus is as follows:

''Unless a residuary bequest is circumscribed · by clear expressions, and the title of the residuary legatee narrowed by words of unmistakable import, it will, to prevent intestacy, be construed so as to perform the office intended, that is, to dispose of all the residuary estate.''

On page 131 of the opinion, after using the language included in the syllabus which I have just read, and referring to the case of *Riker* v. *Cornwell,* 113 N. Y., 115, the court proceeds to say:

"The rule of construction requires of the court, in dealing with the language of a residuary gift which is ambiguous, that it should lean in favor of a broad rather than a restricted construction; for thereby 'intestacy is prevented,' which, it is reasonable to suppose, testators do not contemplate."

To the same effect is the case of *Elizabeth F. Floyd* v. *Charles Carow, as Sole Acting Executor, etc.*, 88 N. Y., 560.

In the fifth syllabus in the case of *Levi P. Morton* v. *Ellen C. Woodbury*, 153 N. Y., 243, the court say:

"Where the words of a residuary clause are of themselves sufficient to constitute the person named therein a general residuary legatee, a clear expression in the will or special words of unmistakable import are required to render him, the legatee, of a particular, instead of a general residue."

These authorities, both in Ohio and elsewhere, seem to establish the doctrine that where the provisions of a will are equivocal or of uncertain meaning, or are doubtful, the court shall give to the construction of the terms in a residuary clause such meaning as will prevent intestacy. The terms of the clause in question in the case at bar are of doubtful meaning, or at least equivocal. They are susceptible of both constructions contended for by counsel. This being true, the presumption against intestacy would control. And this presumption is not merely an academic one. It is derived from and rests upon the almost uniform and invariable conduct of parties who execute wills, that a person, in making his will, intends thereby to dispose of all his estate, is well nigh universal; while a partial will, intending to dispose of only a portion of the testator's estate, leaving to the laws of descent and distribution the division of the estate, is exceptional and exceedingly rare. I have myself never been called upon to draw such a will, nor have I in my personal experience known of a will partial in its terms. Besides this, unless this court allows the presumption to control in this case, the court must necessarily hold that the testatrix intended to dispose of about a fourth or fifth of her estate by will; and to leave three-fourths or four-fifths of her estate to the tender mercies of the laws of descent and distribution.

In view of the foregoing, I am disposed to hold, and do hold, that the will of the testatrix gave to C. Courtland Means and Kenneth Draper Means all of her estate except the specific legacies named therein; and the executor is directed to execute his trust as executor pursuant to such interpretation of said will, and a decree may be taken accordingly.