(87 Misc. Rep. 551)

### In re CLARK.

(Surrogate's Court, Schoharie County.  November, 1914.)

1. WILLS (§ 587*)—CONSTRUCTION—DISTRIBUTION OF ESTATE.

Testatrix bequeathed to each of her three brothers one-fourth of her residuary estate, and bequeathed the remaining one-fourth in equal shares to the children of a deceased brother, and afterwards by a codicil revoked the gift to one brother, and in place thereof gave him a specified money legacy, and also revoked the gift to another brother on account of his death, and in place thereof gave his share to his two children in equal shares. *Held*, that the one-fourth bequeathed to the brother and revoked by codicil should be distributed one-third to the other brother and one-sixth to each of the three nephews and a niece, children of the deceased brothers.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1279, 1281–1291; Dec. Dig. § 587.*]

2. WILLS (§ 440*)—CONSTRUCTION—INTENT.

Where testator's intention can be ascertained, the will should be so construed as to carry out such intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 956; Dec. Dig. § 440.*]

3. WILLS (§ 849*)—CONSTRUCTION—RESIDUARY ESTATE—LAPSE—DESCENT AND DISTRIBUTION.

Where a lapse takes place in part of a residuary estate by reason of a legatee's death, the distribution takes place according to law, and not as the result of testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2165, 2166; Dec. Dig. § 849.*]

4. WILLS (§ 449*)—CONSTRUCTION—PRESUMPTION AGAINST INTESTACY.

Where testatrix made a will and a codicil, and named certain legatees, she presumably did not intend to leave a portion of her estate absolutely undisposed of.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. § 449.*]

Proceedings upon the final judicial settlement of the accounts of the executors, etc., of Rebecca Ann Clark, deceased.  Decree according to opinion.

H. B. Sewell, of Sidney, for executors and certain legatees.

Lyman S. Holmes, of Schoharie, special guardian for certain infants.

BEEKMAN, S.  [1] The testatrix by her will first provided that her funeral expenses and debts should be paid, that a monument should be erected at her grave at a certain cost, and a monument at the grave of her deceased brother, and for the perpetual care of her lot and the lot in which her husband is buried.  She then bequeathed to a half-sister $400, to the daughter of said half-sister $400, and to a cousin $50, and gave her china to certain nieces.  The fourth clause reads:

"Fourth. All the rest, residue and remainder of my estate of every name, nature and kind real or personal and wherever situate, I give, devise and bequeath as follows:  One-fourth thereof to my brother John Bloomer France of Windham, Greene County, N. Y., one-fourth (¼) thereof to my brother William L. France of Castleton, N. Y., one-fourth (¼) thereof to my brother

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Irá Martin France of Cornwallsville, Greene County, N. Y., one-eighth (⅛) thereof to Le Roy France, and one-eighth (⅛) thereof to Minnie Amanda France, the latter two being of Cornwallsville aforesaid, and being the children of my deceased brother Matthias France."

The will is dated January 17, 1911. By a codicil dated May 23, 1913, she revoked the $50 bequest to the cousin and then said:

"Second. I hereby revoke and cancel the bequest to Ira Martin France, my brother of one-fourth of my estate and in place of said one-fourth of my estate I give, devise and bequeath to said Ira Martin France the sum of five hundred dollars ($500).

"Third. I hereby revoke the bequest to John Bloomer France my brother of one-fourth of my estate on account of the death of said John Bloomer France, in the place of said bequest to John B. France I give, devise and bequeath said one-fourth of my estate to my nephews Richard M. France of Windham, N. Y., and Ralph W. France of Sidney, N. Y., they being the sons of my deceased brother. It being my intention and desire that they shall take their father's share in my said property, they to share equally. And I hereby ratify and confirm my said last will and testament in every respect save so far as any part of the same is inconsistent with this codicil."

The question arises on the final judicial settlement of this estate as to how the distribution shall take place—whether, the testatrix having revoked the bequest to Ira M. France of one-fourth of the residuary fund and given him in place thereof $500, said one-fourth of the residue shall pass to William L. France, Le Roy France, Minnie A. France, Richard M. France, and Ralph W. France, or shall pass as in case of intestacy. It will be noticed that in her codicil the testatrix used the words "one-fourth of my estate" in the second and third clauses, but by "estate" she evidently referred to the residuary fund. The will itself is apparently drawn with care and particularity. By the will she seems to have used the broadest language possible, so as to include in the fourth clause all her property which she had not disposed of by the prior clauses. The difficulty in construction arises on account of the language of the codicil. She revokes the one-fourth given to her brother Ira, and says that instead of having that fourth he shall have $500. This places the legacy of $500 among the specific bequests and decreases the residuary fund by $500.

It is apparent that the scheme and plan of the original will was that after having provided for her debts and some small bequests, and after having provided for her *half*-sister and the daughter of her half-sister by giving them each $400, she desired the rest of her property to go to her brothers of the *full* blood and the children of the deceased brother, and that the reason why she designated the fractional parts was because she desired to make it plain that Roy and Minnie should take their father's share equally. After executing the will for some reason she desired to cut down the legacy to Ira (for according to the accounts it is fair to presume that she knew that the residuary fund would amount to more than $500), and she revokes the bequest of one-fourth to Ira, and uses the significant words, "and *in place* of said one-fourth of my estate I give and bequeath to Ira Martin France the sum of five hundred dollars," thereby evidencing her intention that he should take a certain sum as a specific legatee, and no more than that sum, and that the residue should pass to the other residuary legatees.

Her brother John Bloomer France having died, she revokes a bequest to him in the residuary clause, and gives what he would have taken to her two nephews; that is, to two of the sons of her deceased brother John B. It appears that one of the sons of her brother John B. had died, leaving an infant son, who was a grandnephew of the testatrix. By the codicil it is plain that she did not intend that her grandnephew should take any of his grandfather's share, for she names Richard and Ralph as the ones who shall take their father's share, and, in fact, says:

"They shall take their father's share in my said property and are to share equally."

It does not seem reasonable, considering all parts of the will and the codicil, that it was her intention to leave any portion of her property undisposed of. She must have known that, in case she did not dispose of all of her estate, then it would pass as if she had made no will, and that the effect of leaving a fourth undisposed of would have been to leave it for distribution among her heirs at law and next of kin, all of whom were named in her will, except her greatnephew. She apparently intended that the $500 to Ira and the specific bequest to the other specific legatees should be all that they should receive. It is most reasonable to suppose that her intention was that those who are named in the residuary clause should be the recipients of all the property she had left after fulfilling these specific bequests; that is, that her living brother William L. should take one-third of the residue, Le Roy and Minnie, the children of her brother Matthias, each the half of a third, and Richard and Ralph, two of the sons of John, each the half of the other third. Her natural thought would have been that, having made a residuary clause and having eliminated one of those named in that clause, those left in, or substituted in, that clause should take the residue of her estate.

[2-4] The intention of the testator should always be carried out, providing it can be reasonably ascertained. The situation in this case is different from where a fourth of the residue might have lapsed by reason of the death of the legatee without heirs. When a person prepares his will, the lapsing is an event that may not be within the contemplation of the testator when he makes his will, and where a lapse takes place in a part of the residue by reason of the death of some legatee the distribution takes place according to law, and not as the result of the *intention* of the testator. In this case we start with the presumption that the testatrix, having made a will and codicil and named certain legatees, did not intend to leave a portion of her estate absolutely undisposed of.

Whatever change was made in the will was by the act of the testatrix, by which by codicil she endeavors to change the amounts going to some of the natural objects of her bounty. This opens the field where we must seek to find her intention. Where, after the making of a will, a bequest of a portion of the residuary fund lapses by reason of death, or by reason of the failure of a designated legatee (a corporation, for instance) to take on account of legal incapacity in the legatee, we do not then go back to the time of the making of the will to

ascertain the intention in determining distribution; but the devolution of the property takes place by operation of the law, unless there is something in the will which provides for such emergencies as may have subsequently taken place.

The following cases while not exactly like the one in question—and, indeed, we never find two wills exactly alike in language and attending circumstances—lay down principles which seem to me to support the construction given in this case, namely, that William L. France is entitled to one-third, and that Le Roy France, Minnie Amanda France, Richard M. France, and Ralph W. France are each entitled to a one-sixth of the residuary fund:

In Schult v. Moll, 132 N. Y. 122, 30 N. E. 377, where the will, in making a bequest, said, "To my wife B. H. one-third, that is to say, her dower right of my estate," the words, "that is to say, her dower right of my estate," were disregarded, and the court, applying the principle that the law does not favor partial intestacy, says:

"We have thus referred to the language of the will, and briefly to the surrounding circumstances, which may properly be employed in its interpretation, and they seem to strongly indicate that it was the intention of the testator to vest the fee of an undivided one-third of his real estate in Babetta. One of the facts alluded to has been given prominence in repeated adjudications involving the question of intent. We refer to the fact that, if Babetta did not take a fee, then as to an undivided one-third of the estate testator died intestate subject to a life estate. The law favors a construction which will prevent partial intestacy. Redfield, in his work on Wills, says: 'The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator, for the fact of making a will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will.' Volume 2, p. 442."

In Lamb v. Lamb, 131 N. Y. 234, 30 N. E. 134, the court says:

"The intention of the testator is to be followed if the actual intention is discoverable from the language employed. * * * But where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction. It prevents intestacy, which it is reasonable to suppose testators do not contemplate, and if the mind is left in doubt upon the whole will as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet the testamentary purpose, because such a clause is usually inserted to provide for contingencies or lapses and to cover whatever is left, after satisfying specific and special purposes of the testator manifested in other clauses of his will."

In Hoppock v. Tucker, 59 N. Y. 202, where the testator gave a certain part of his estate in "equal portions share and share alike" to J., H. and W., children of a deceased daughter, it was held that while the clause, taken alone, would be construed as a bequest to the persons named as individuals, yet as it appeared, from the general scheme of the will and various provisions therein, that the intent was that the issue of al his children, where they took under the will, should take by representation, the clause should be construed as a bequest to them as a class, and as one of them had died without issue that the other two took the whole. This was on the principle that an intent inferable from

the language of a particular clause of a will may be qualified or changed by other portions of the will evincing a different intent.

The latest case which presents a state of affairs very similar to this is that of Williams v. Petit, 138 App. Div. 394, 122 N. Y. Supp. 746. There the clause construed read:

"I give, devise and bequeath to G. my sister, H. niece, B. and J. nephews, * * * to each, the undivided one-eighth of all my real estate and personal property wherever the same may be except as hereinafter mentioned; to W. my nephew, and B. my niece, * * * the undivided two-eighths of all my real estate and personal property wherever the same may be except as hereinafter mentioned, to wit. * * *"

It will be observed that the words "to each" appear after the names of the first-mentioned legatees and that those words do not appear in connection with the nephew and niece last named. If only an undivided two-eighths was given to the last-named nephew and niece, there remained undisposed of an undivided two-eighths of the residue. The court held that the nephew W. and niece B. each took an undivided two-eighths, citing, among other cases, Vernon v. Vernon, 53 N. Y. 351, Meeks v. Meeks, 161 N. Y. 66, 55 N. E. 278, and Matter of Miner, 146 N. Y. 121, 131, 40 N. E. 788, 790, in which the court said:

"In performing the office of construction, and in order that an apparent intention of the testator shall not be rendered abortive by his inapt use of language, the court may reject words and limitations, supply them, or transpose them, to get at the correct meaning. Phillips v. Davies, 92 N. Y. 199."

Decreed accordingly.